Argued and submitted September 10, 1985; reassigned March 4, Court of Appeals
reversed, trial court judgment affirmed July 1, 1986

# STATE OF OREGON,
*Petitioner on review,*

*v.*

# RODERICK DARNELL BROWN,
*Respondent on review.*

## (DC DA 249576; DA 249577; CA A29759; SC S31637)

721 P2d 1357

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the petition were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

David C. Degner, Hillsboro, argued the cause for respondent on review.

JONES, J.

Linde, J., filed a dissenting opinion joined by Lent, J.

**JONES, J.**

This case presents the question whether police officers are required to obtain a warrant before searching the trunk of a lawfully stopped automobile when the officers who arrested the driver have probable cause to believe that the trunk contained relevant evidence of the crime for which the arrest could have been made. We hold that under these circumstances no warrant was required and the search of the trunk and the seizure of the crime evidence did not violate Article I, section 9, of the Oregon Constitution, or the Fourth Amendment to the United States Constitution.

## FACTS

In the early morning hours of January 27, 1983, Ms. Tillman reported to two police officers, Krohn and Hudson, that defendant, her boyfriend, had assaulted her and stolen her purse containing $15 or $20. She also told the officers that defendant always carried a handgun in a "black purse" either on his person or in the trunk of his car. The gun had not been used in the incident with Tillman. Because of an earlier domestic disturbance between Tillman and defendant, Officer Hudson was personally acquainted with defendant and had reported that during the earlier disturbance defendant had a gun in his pocket. Officer Hudson also knew the make, year, color and license number of defendant's automobile.

The following morning at about 1:15 a.m., Officers Krohn and Hudson stopped defendant while he was driving his automobile. The trial court found that "the reason for the stop was to arrest defendant on the assault and theft" charges and that "[d]efendant was advised why he was stopped, and was told of the accusations about possession of a weapon." When defendant declined to consent to a search of his automobile, the officers searched the passenger compartment and the glove box. Officer Krohn then opened the locked trunk and saw a black leather bag or purse similar to the one described by Tillman as the bag in which defendant carried a handgun. The bag was closed. When Officer Krohn picked it up he could feel a heavy handgun inside. The bag and the gun were seized.

According to Officer Krohn, defendant was handcuffed during the entire search. Officer Hudson could not

remember when, or if, defendant was handcuffed, but said that defendant was placed in the patrol car when "we decided we were going into the trunk and get the gun out."

Defendant was taken to jail and booked on the assault and theft charges; however, Tillman never signed complaints charging him with those crimes. Defendant was later charged with unlawful possession of a weapon, ORS 166.250,[1] and carrying a loaded firearm in violation of Portland City Code Ordinance 14.32.010.[2]

The trial judge prepared written conclusions which included the following:

"8. The search in this case can be sustained only under the moveable vehicle exception to the requirement of a search warrant. *Chambers v. Maroney,* 399 US 42 (1970); CLE,

---

[1] At the time of defendant's arrest, ORS 166.250(1) provided:

"Except as otherwise provided in this section, ORS 166.260, 166.270, 166.280, 166.290 or 166.410 to 166.470, any person who possesses or has in his possession any machine gun, or carries concealed upon his person or within any vehicle which is under his control or direction any pistol, revolver or other firearm capable of being concealed upon the person, without having a license to carry such firearm as provided in ORS 166.290, is guilty of a misdemeanor, unless he has been convicted previously of any felony or of any crime made punishable by this section, ORS 166.260, 166.270, 166.280, 166.290 or 166.410 to 166.470, in which case he is guilty of a felony."

ORS 166.250 was amended by Oregon Laws 1985, chapter 543, section 2, and now defines the crime as occurring when one knowingly carries a concealable firearm "concealed and readily accessible about the person within any vehicle * * *." Because a firearm in the trunk of a car is not "readily accessible about the person," defendant's conduct would no longer be a crime. ORS 161.035(4) addresses the effect of statutory amendments after the occurrence of the conduct and before a conviction becomes final. It provides:

"When all or part of a criminal statute is amended or repealed, the criminal statute or part thereof so amended or repealed remains in force for the purpose of authorizing the accusation, prosecution, conviction and punishment of a person who violated the statute or part thereof before the effective date of the amending or repealing Act."

[2] Portland City Code Ordinance 14.32.010 provides in pertinent part:

"(a) As used in this Chapter, 'firearm' means a pistol, revolver, gun, rifle, or other ordnance, * * *.

"* * * * *

"(c) It is unlawful for any person on a public street or in a public place to carry a firearm upon his person, or in a vehicle under his control or in which he is an occupant, unless all ammunition has been removed from the chamber and from the cylinder, clip, or magazine."

*Criminal Constitutional Procedure* Sections 3.5.23, 3.5.30 (1982 Supp).

"9.    Probable cause to search the vehicle under the moveable vehicles exception existed in this case because of the information provided by the citizen informer that the defendant 'always' carries a gun on his person or in his car. CLE, *Criminal Constitutional Procedure* Sections 3.4.11, 3.5.30 (1982 Supp).

"10.   'If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.' *United States v. Ross,* 456 US 798, 102 S Ct 2157, 2172, 72 L Ed 2d 572 (1982) (sustaining the search of a paper bag and a zippered leather pouch seized from the trunk of a car.)

"11.   Because of the mobility of the vehicle and the easy disposability of the evidence, exigent circumstances existed in this case to authorize an immediate search of the vehicle. CLE, *Criminal Constitutional Procedure* Sections 3.5.30, 3.5.35 (1982 Supp.)"

In sum, the trial judge reasoned that the information that defendant carried a concealed gun provided probable cause to search the vehicle for the gun[3] and upheld the warrantless search of the trunk of the automobile. The court found that exigent circumstances existed "because of the mobility of the vehicle and the easy disposability of the evidence." The trial court held that these exigent circumstances authorized the immediate search of the automobile and denied the motion to suppress. Defendant was convicted of the charges.

The Court of Appeals concluded that there was "no evidence that the officers reasonably believed that defendant did not have a license" for the gun, that the search for the weapon was not related to the arrest for theft and assault, and that the search exceeded the permissible bound of searches incident to arrests. *State v. Brown,* 72 Or App 342, 347, 695 P2d 1383 (1985). The Court of Appeals rejected the idea, as it had in previous cases, *State v. Martin,* 71 Or App 1, 6, 691 P2d

---

[3] The Court of Appeals took issue with this conclusion, but the defendant never challenged the trial court ruling that there was probable cause to search the trunk for the gun. Therefore, we do not address that issue.

154 (1984); *State v. Kirsch,* 69 Or App 418, 421, 686 P2d 446 (1984), that the warrant requirement of Article I, section 9, is suspended for searches of automobiles.

The state seeks to validate the search on either of two independent grounds. It first points to the mobility of automobiles and contends that searches of automobiles need not be conducted pursuant to warrants in any case, so long as probable cause exists to believe that the vehicles contain evidence of a crime. Secondly, it argues that the search was properly an incident to the arrest. Because we hold that the conduct of the police in this case was fully justified as a proper "automobile exception"[4] warrantless search and seizure, we need not address the state's second contention that the search could also be justified as incident to defendant's arrest.

### THE OREGON AUTOMOBILE EXCEPTION

The Fourth Amendment to the United States Constitution and the parallel but independent guarantee of personal privacy of Article I, section 9, of the Oregon Constitution, have long been interpreted to require the impartial approval of a judicial officer before the undertaking of most searches. The warrant requirement of these provisions may be dispensed with in only a few specifically established and well-delineated circumstances.

The Fourth Amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Article I, section 9, of the Oregon Constitution provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon

---

[4] When we refer to automobiles, motor vehicles or cars, we include similar conveyances.

probable cause, supported by oath, or affirmation, and particularly describing the place to searched, and the person or thing to be seized."

As we said in *State v. Quinn,* 290 Or 383, 390-91, 623 P2d 630 (1981):

"Two fundamental principles flow from these constitutional provisions: First, all persons are to be free from unreasonable governmental searches and seizures of their persons and property. Second, as a means of protecting that freedom, the decision to search is to be made by a disinterested branch of government, the judiciary, rather than the branch which performs the search and seizure, the executive branch. *Coolidge v. New Hampshire,* 403 US 443, 91 S Ct 2022, 29 L Ed 2d 564 (1971).

"The requirement that there be preliminary judicial authorization for any official search or seizure is not absolute. The exigent circumstances doctrine recognizes that what is practical may also be reasonable. Therefore, as one example, an automobile, which is mobile by its very nature, may be searched and seized without a warrant if there is probable cause to believe that it contains fruit, instrumentalities or evidence of crime and if there are also exigent circumstances which make it impracticable to obtain a warrant. This exception arises from 'practical necessity,' *State v. Greene,* 285 Or 337, 591 P2d 1362 (1979). * * *"

■     This case presents for us the heretofore unanswered question: Is there an "automobile exception" to the warrant requirement of Article I, section 9, of the Oregon Constitution? We hold that there is such an exception, provided (1) that the automobile is mobile at the time it is stopped by police or other governmental authority, and (2) that probable cause exists for the search of the vehicle. By adopting such a position, we align ourselves with the traditional federal "automobile exception" to the Fourth Amendment warrant requirement as set forth in the seminal case of *Carroll v. United States,* 267 US 132, 45 S Ct 280, 69 L Ed 543 (1925), and its progeny. In doing so, we wish to make clear that we are deciding this case independent of federal law; we decide this case under the Oregon Constitution and not the federal constitution. We cite the United States Supreme Court decisions only because we believe they are persuasive, not because they are precedent for this court in interpreting the Oregon Constitution.

In 1925, the United States Supreme Court in *Carroll v. United States, supra,* held that because of its mobility an automobile that is stopped on the highway may be searched without a warrant when police officers have probable cause to believe that it contains contraband. After surveying the law from the time of the adoption of the Fourth Amendment onward, the Court held that automobiles and other conveyances may be searched without a warrant in circumstances that would not justify the search without a warrant of a house or an office, provided that there is probable cause to believe that the automobile contains articles that the officers are entitled to seize. The Court expressed its holding as follows:

"We have made a somewhat extended reference to these statutes to show that the guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the beginning of the Government, as recognizing a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon or automobile, for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.

"Having thus established that contraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant, we come now to consider under what circumstances such search may be made. * * * [T]hose lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a competent official authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise. * * *

"* * * * *

"* * * The measure of legality of such a seizure is, therefore, that the seizing officer shall have reasonable or probable cause for believing that the automobile which he stops and seizes has contraband liquor therein which is being illegally transported." 267 US at 153-54, 155-56.

In *United States v. Ross,* 456 US 798, 102 S Ct 2157, 72 L Ed 2d 572 (1982), Justice John Paul Stevens wrote the opinion for the Court, which stated a rule that police officers who lawfully stopped a vehicle, having probable cause to believe that contraband is located or concealed somewhere

therein, may conduct a warrantless search of the vehicle as thoroughly as that which a magistrate could authorize by warrant. The Court stated that "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies a search of every part of the vehicle and its contents that may conceal the object of the search." 456 US at 825.

■ We agree with the proposition that if police have probable cause to believe that a person's automobile, which is mobile when stopped by police, contains contraband or crime evidence, the privacy rights of our citizens are subjected to no greater governmental intrusion if the police are authorized to conduct an immediate on-the-scene search of the vehicle than to seize the vehicle and hold it until a warrant is obtained. The police ticket to admission into a stopped mobile vehicle is probable cause. The test is whether a magistrate could issue a constitutionally sound search warrant based on the probable cause articulated by the officers. Here, if the officers had made sworn statements to a magistrate that they had reliable information from a credible informant that this defendant always carried a gun on his person or in a black bag in the trunk of his car, a warrant issued pursuant to such an affidavit would authorize a constitutionally valid seizure of the automobile and the search of the trunk.

In explaining the nature of the "exigency" required to satisfy Article I, section 9, of the Oregon Constitution, we emphasize that the key to the automobile exception is that the automobile need be mobile at the time it is lawfully stopped. No exigent circumstances other than the mobility of the stopped vehicle need be demonstrated. The California Supreme Court has noted that a variety of factors may demonstrate a particular "exigency" supporting an immediate search, including the lateness of the hour, the remote location of the car, and the comparative number of police and suspects present on the scene. But that court specially held that none of these circumstances is essential to establish "exigency" to sustain the validity of the seizure of a lawfully stopped vehicle or its immediate search without a warrant. Mobility of the vehicle at the time of the stop, by itself, creates the exigency. *See People v. Cook,* 13 Cal 3d 663, 119 Cal Rptr 500, 532 P2d 148 (1972); *Wimberly v. Superior Court,* 16 Cal Rptr 641, 547 P2d 417 (1976); and *People v. Chavers,* 33 Cal 3d 462, 189 Cal Rptr 169, 658 P2d 96 (1983).

■ We are convinced that adoption of a *"per se* exigency rule" is a sound approach which provides the clearest guidelines for police in conducting automobile searches. Exigencies should not be determined on a case-by-case basis. Police need clear guidelines by which they can gauge and regulate their conduct rather than trying to follow a complex set of rules dependent upon particular facts regarding the time, location and manner of highway stops. Accordingly, we join the federal courts and many other state courts,[5] and hold that probable cause to believe that a lawfully stopped automobile which was mobile at the time of the stop contains contraband or crime evidence justifies an immediate warrantless search of the entire automobile for the object of the search, despite the absence of any additional exigent circumstances.

In *State v. Quinn, supra,* 290 Or at 391, this court stated that "the essential mobility of an automobile is not necessarily sufficient in itself to dispense with the necessity of a warrant for its seizure," citing *State v. Fondren,* 285 Or 361, 591 P2d 1374, *cert den* 444 US 834 (1979) (unoccupied parked car at defendant's place of employment). That statement was unnecessary in *Quinn* because the court found that the officer had additional articulable reasons for prompt action in that the car was partially blocking traffic and that it appeared to contain stolen property which the police were obliged to recover and restore to the owner. The court found that these were sufficient exigent circumstances to justify the officer's decision to seize the car without a warrant. In addition, the citation for that statement was to *State v. Fondren, supra,* which did not involve the stop of a mobile automobile but involved the search of a parked car. We reject the language that anything in addition to the mobility of an automobile at the time it is lawfully stopped is required to create exigency under the automobile exception as defined in this case. We are not confronted in this case with the search of a vehicle that is not mobile and has not just been lawfully stopped by a police officer. We, therefore, do not address in this opinion whether a warrant for the search and seizure of a parked or impounded automobile is required.

---

[5] *See, e.g., People v. Chavers,* 33 Cal 3d 462, 189 Cal Rptr 169, 658 P2d 96 (1983); *People v. Barton,* 673 P2d 1005 (Colo 1984); *People v. Smith,* 95 Ill 2d 412, 69 Ill Dec 374, 447 NE2d 809 (1983); *People v. Langen,* 60 NY2d 170, 456 NE2d 1167 (1983); *Hunter v. State,* 704 P2d 713 (Wyo 1985).

In the case at bar, the trial judge recognized that the mobility of the vehicle alone created the exigent circumstances necessary to satisfy Article I, section 9, of the Oregon Constitution, and he properly disregarded that the defendant was under arrest and in police custody and that the car was under police control when the search was conducted. As previously mentioned, under the "automobile mobility" test it does not matter whether the passenger could have taken over the custody of the car (which he eventually did), whether the police had adequate personnel to back-up the arrest, whether a tow truck was available, whether a magistrate was available by telephone or otherwise,[6] or whether a threatening crowd gathered, etc. All the trial judge needed to find was what he did find: (1) the car was mobile at the time it was stopped by the police; and (2) the police had probable cause to believe that the car contained contraband or crime evidence. As we said in *State v. Greene, supra,* and *State v. Quinn, supra,* we agree with the reasoning of the the United States Supreme Court that for constitutional purposes no difference exists between, on the one hand, seizing and holding a car before presenting the probable cause issue to a magistrate and, on the other hand, carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Oregon Constitution.

---

[6] In this modern day of electronics and computers, we foresee a time in the near future when the warrant requirement of the state and federal constitutions can be fulfilled virtually without exception. All that would be needed in this state would be a central facility with magistrates on duty and available 24 hours a day. All police in the state could call in by telephone or other electronic device to the central facility where the facts, given under oath, constituting the purported probable cause for search and seizure would be recorded. The magistrates would evaluate those facts and, if deemed sufficient to justify a search and seizure, the magistrate would immediately issue an electronic warrant authorizing the officer on the scene to proceed. The warrant could either be retained in the central facility or electronically recorded in any city or county in the state. Thus, the desired goal of having a neutral magistrate could be achieved within minutes without the present invasion of the rights of a citizen created by the delay under our current cumbersome procedure and yet would fully protect the rights of the citizen from warrantless searches.

Telephonic warrants are only a first step in the process we envision. See discussion of Oregon's statutory provisions for telephonic search warrants, ORS 133.545(5), in *State v. Lowry,* 295 Or 337, 363 n 14, 667 P2d 996 (1983) (Jones, J., specially concurring). See also the discussions of early efforts to institute telephonic warrants in Miller, *Telephonic Search Warrants: The San Diego Experience,* 9 Prosecutor 385 (1974); Comment, *Oral Search Warrants: A New Standard of Warrant Availability,* 21 UCLA L Rev 691 (1973); *cf.* McCalla, *Telewarrants,* 16 Ottawa L Rev 425 (1984).

Finally, we hold that the scope of the warrantless search of the automobile was reasonable. As stated in *Ross,* the scope of a warrantless search is defined by

"* * * the object of the search and the places in which there is probable cause to believe that it may be found. Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase. Probable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab." 456 US at 593.

Thus, in this case since there was probable cause to believe that the gun was in the black purse in the trunk of the car, the scope of the search and seizure of the gun was reasonable. The search and seizure in this case also met federal constitutional standards. *United States v. Ross, supra.*

The Court of Appeals is reversed and the trial court judgment is reinstated.

**LINDE, J.,** dissenting.

Defendant's conviction rests on the discovery of a handgun after a warrantless and unconsented search of a closed bag located in the locked trunk of defendant's automobile after defendant was stopped and arrested on unrelated charges, removed from the automobile, and handcuffed. From prior information the officers had reason to expect to find a handgun in a bag somewhere in the vehicle. Assuming that the information gave the "probable cause" required by Article I, section 9, of the Oregon Constitution for a search of one's person, house, papers, or "effects," the question is whether the search could be conducted without the warrant ordinarily required by that section.[1]

The state argues primarily that the search can be

---

[1] Article I, section 9 of the Oregon Constitution provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

brought within the exception of searches incident to a person's arrest. Alternatively, the state asks this court to recognize an "automobile exception," as that phrase has come to be used for cases decided under the federal fourth amendment, contrary to the view of the Court of Appeals that "[t]here is no 'automobile exception' under the Oregon Constitution."[2]

The majority today affirms defendant's conviction neither on the theory that the search was "incident to" defendant's arrest nor on the United States Supreme Court's current version of an "automobile exception" from the warrant requirement of the fourth amendment, but upon a more narrowly defined exception limited to reasonable searches on probable cause of vehicles lawfully stopped in transit, which is based on a theory that searches in such a setting are always "exigent." The majority's discussion of modernizing the warrant process suggests that today's decision is a temporary accommodation that remains open for future reconsideration.

Because the court does not accept the broader arguments for dispensing with search warrants for the closed compartments of automobiles generally, my disagreement with the majority's narrow holding is correspondingly narrow. I do not agree that in every case, the search of the trunk of a mobile vehicle, once it has been stopped, is "exigent *per se*" regardless of individual circumstances. A rule authorizing warrantless police searches of automobiles on probable cause alone, without actual circumstances of necessity, should be enacted by politically accountable elected policymakers rather than by this court, before we decide its constitutionality. Because I disagree with the majority's contrary ruling, I also must explain why the state's other theory does not justify this warrantless search.

## I.

This court last undertook to "clarify the law relating to the search and seizure of vehicles" in four decisions in 1979.[3] I wrote at the time that the court's stated aim was "a

---

[2]*State v. Kirsch,* 69 Or App 418, 421, 686 P2d 446, *rev den* 298 Or 151 (1984); *see also State v. Martin,* 71 Or App 1, 6, 691 P2d 154 (1984).

[3]*State v. Groda,* 285 Or 321, 591 P2d 1354 (1979); *State v. Greene,* 285 Or 337, 591 P2d 1362 (1979); *State v. Fondren,* 285 Or 361, 591 P2d 1374 (1979); *State v. Downes,* 285 Or 369, 591 P2d 1352 (1979).

worthy ambition but an incautious one," because "the goal of a clear and comprehensive statement of the law of Oregon governing police searches of vehicles or of anything else will not be achieved by the means by which the Court pursues it." *State v. Greene,* 285 Or 337, 345, 591 P2d 1362 (1979)(Linde, J., specially concurring.)[4]

Seven years have passed, but that statement is as true today as it was seven years ago. In today's opinions in State v. Bennett, 301 Or 299, 721 P2d 1375 (1986), and in this case, three judges articulate a rule for searching automobiles and their contents in one kind of situation and the Chief Justice, although "troubled," joins to make a majority with the aim of "putting the question to rest." 301 Or at 308.

The rest will not be a good night's sleep. Today's opinions, too, remain transitory not only because the Court itself is in transition — the "committee attempting to draw a horse [while] the membership of the committee constantly changes," to which Professor Anthony Amsterdam ascribed the "camel" of fourth Amendment Law[5] — but also because the opinion rests upon premises of "exigency" and the limitations of the warrant process that can be, and therefore should be, overcome.

Search and seizure law has not stood still in the years since this court's 1979 decisions, nor has the United States Supreme Court been more successful than this court in finding a coherent rationale for searches of vehicles and containers in vehicles. The Supreme Court held that the federal fourth amendment required search warrants to open luggage and packages. Then, with Justice Stewart writing for a plurality just before his retirement, the Court in 1981 limited the area of an automobile that could be searched incident to an arrest to the passenger area and containers in that area, excluding the car's trunk. Within a year the Court abandoned

---

[4]Justice Lent and I differed from the Court insofar as we "would suppress the evidence obtained by a warrantless search of the automobile trunk." *State v. Greene, supra,* 285 Or at 345 (Linde, J., concurring).

[5]Amsterdam, *Perspectives on the Fourth Amendment,* 58 Minn L Rev 349, 350 (1974).

One member of the present court retired after today's cases were argued; her replacement did not participate in these decisions.

that limitation both for trunks and for containers found within them.[6]

There were independent developments in this court's decisions. The 1979 majority opinions still followed a view stated in 1974 that tied Oregon's law to federal decisions unless there were "persuasive reasons" to the contrary.[7] That view, which treated each latest formulation of the United States Supreme Court as a benchmark for the Oregon Constitution, had not been followed in other contexts,[8] and it was overruled with respect to search and seizure law in *State v. Caraher,* 293 Or 741, 653 P2d 942 (1982). *Caraher* and other decisions reasserted the responsibility of Oregon courts to make independent determinations of Oregon law in criminal procedure as much as in other areas which might or might not correspond to federal decisions in method or in result.[9]

---

[6]The cases were *Arkansas v. Sanders,* 442 US 753, 99 S Ct 2586, 61 L Ed 2d 235 (1979) (following *United States v. Chadwick,* 433 US 1, 97 S Ct 2476, 53 L Ed 2d 538 (1977)); *Robbins v. California,* 453 US 420, 101 S Ct 2841, 69 L Ed 2d 744 (1981); *New York v. Belton,* 453 US 454, 101 S Ct 2860, 69 L Ed 2d 768 (1981); *United States v. Ross,* 456 US 798, 102 S Ct 2157, 72 L Ed 2d 572 (1982) (overruling *Robbins v. California, supra).*

*Ross* did not eliminate difficulties with the federal "automobile exception" or settle them to the satisfaction even of the *Ross* majority; *see, e.g., California v. Carney,* 471 US ____, 105 S Ct 2066, 85 L Ed 2d 406 (1985)(search of mobile home), in which Justice Stevens, the author of *Ross,* wrote the dissent. *See also, New York v. Class,* ____ US ____, 106 S Ct 960, 89 L Ed 2d 81 (1986)(search of stopped auto for vehicle identification number)(Powell, J., and Burger, C.J., concurring; Brennan, Marshall, Stevens, and White, J.J., dissenting).

[7]*State v. Greene, supra,* 285 Or at 339, citing *State v. Florance,* 270 Or 169, 182, 527 P2d 1202 (1974); *State v. Flores,* 280 Or 273, 279, 570 P2d 965 (1977).

[8]*Dickman v. School Dist. 62C,* 232 Or 238, 243, 366 P2d 533 (1961), *cert den* 371 US 823 (1962) (Oregon Constitution precludes supplying textbooks free of charge to parochial school); *Deras v. Myers,* 272 Or 47, 64, 535 P2d 541 (1975) (Oregon Constitution precludes prohibitory limits on spending in election campaigns); *see State v. Kennedy,* 295 Or 260, 666 P2d 1316 (1983)(former jeopardy clause of state constitution bars retrial when official intends or is indifferent to resulting mistrial forced by official's improper conduct).

[9]*State v. Dykast,* 300 Or 368, 712 P2d 79 (1985) (defendant's right to speedy trial held not violated under Article I, section 10 of the Oregon Constitution); *City of Salem v. Bruner,* 299 Or 262, 702 P2d 70 (1985)(dual appellate procedures upheld under Article I, section 20 as long as officer's discretion to charge in municipal court or district court rests on criteria consistently applied to similarly situated defendants); *State v. Hart,* 299 Or 128, 699 P2d 1113 (1985)(Article I, section 11 does not provide for a criminal jury trial on the issue of restitution; Article I, section 17 does not provide for a civil jury trial on the issue of restitution); *State v. Mains,* 295 Or 640, 669 P2d 1112 (1983)(Article I, section 12 requires additional warnings to a represented defendant while being examined by a psychiatrist at the instance of the state); *State v.*

As to searches and seizures, the court has reiterated that under Article I, section 9 of the Oregon Constitution, the state may not prosecute a person with evidence obtained in violation of law that is designed to protect the person against the kind of intrusion by which the evidence is seized,[10] that the requirement of a search warrant is the norm and warrantless searches are unlawful with limited exceptions,[11] that an arrest may be accompanied by a search for evidence only of the crime for which the arrest was made,[12] that a warrantless seizure and a warrantless search are distinct events requiring separate justification,[13] and that officers may not search the belongings of a person held for reasons other than a criminal charge and may inventory them only under validly promulgated and uniformly applied administrative procedures.[14]

Accordingly, the majority faithfully recites that "the warrant requirement * * * may be dispensed with in only a few specifically established and well-delineated circumstances" and that "we are deciding this case independent of federal law." 301 Or at 273.

The rule that searches must be judicially authorized whenever possible and that warrantless searches are extraordinary departures from the rule deserves to be more than a comforting fable. Routinely recited in opinions sustaining

---

*Clark,* 291 Or 231, 630 P2d 810 (1981), and *State v. Edmondson,* 291 Or 251, 630 P2d 822 (1981)(Oregon's constitutional guarantee of equal privileges and immunities, Article I, section 20, applies to individual as well as class discrimination in criminal procedure); *Brown v. Multnomah District Court,* 280 Or 95, 570 P2d 52 (1977)(legislative amendments purporting to decriminalize first offense of driving under the influence of intoxicants did not eliminate punitive traits that characterize a criminal prosecution for purposes of Article I, section 11); *State v. Kennedy, supra; see also* Carson, *'Last Things Last:' A Methodological Approach to Legal Argument in State Courts,* 19 Willamette L J 641 (1983).

[10]*State v. Davis,* 295 Or 227, 666 P2d 802 (1983); *See also State v. Pottle,* 296 Or 274, 677 P2d 1 (1984); *State v. Bishop,* 288 Or 349, 605 P2d 642 (1980); *State v. Jones,* 279 Or 55, 566 P2d 867 (1977).

[11]*State v. Lowry,* 295 Or 337, 346, 667 P2d 996 (1983); *State v. Davis, supra,* 295 Or at 237; *State v. Quinn,* 290 Or 383, 623 P2d 630 (1981); *State v. Greene, supra,* 285 Or at 341; *State v. Miller,* 269 Or 328, 334, 524 P2d 1399 (1974).

[12]*State v. Caraher,* 293 Or 741, 653 P2d 942 (1982).

[13]*State v. Lowry, supra,* at 337.

[14]*State v. Atkinson,* 298 Or 1, 688 P2d 832 (1984). *See also State v. Perry,* 298 Or 21, 688 P2d 827 (1984); *State v. Newman,* 292 Or 216, 637 P2d 143 (1981), *cert denied* 457 US 1111, 102 S Ct 2915, 73 L Ed 2d 1321 (1982).

another warrantless search, it becomes an empty ritual. As for independent analysis of Oregon law, the majority states: "We cite the United States Supreme Court decisions only because we believe they are persuasive, not because they are precedent for this court in interpreting the Oregon Constitution." 301 Or at 274.

It may be tempting to adopt another court's reasoning by reference rather than to spell out one's own, but in areas such as search and seizure law, quotations only beg the question why the quoted opinion is more persuasive than other opinions or academic critiques that are not quoted. In a 1985 decision applying California's search and seizure clause, the California Supreme Court, like today's majority, wrote: "[W]e find the reasoning in [federal cases] persuasive." *People v. Ruggles,* 39 Cal 3d 1, 11, 216 Cal Rptr 88, 702 P2d 170 (1985). The difference is that what the California court found persuasive were the United States Supreme Court's decisions in *Chadwick, Sanders,* and *Robbins, supra,* n. 6. The California court rejected the position taken in *United States v. Ross,* 456 US 798, 102 S Ct 2157, 72 L Ed 2d 572 (1982), and invalidated the warrantless search of bags found in a car trunk despite abundant probable cause for the search.

If the present cases had come to this court early in 1982, after the Supreme Court's decision in *Robbins* and before *Ross,* a majority of this court similarly might have found the then latest word from the Supreme Court "persuasive" on the meaning of Oregon's Article I, section 9. *People v. Ruggles, supra,* strikingly demonstrates the costs of reversing logic and deciding cases on federal grounds before reaching state issues. When an intermediate California court originally sustained the search, the United States Supreme Court remanded the decision for reconsideration in light of its decision in *Robbins.* The California court reconsidered and reversed itself, only to face another grant of *certiorari* and a further mandate to reconsider once more in light of the Supreme Court's change of direction in *Ross.* On the second remand the California Supreme Court finally decided the case under the California constitution. 39 Cal 3d at 7, n. 3. *Cf. State v. Kennedy,* 295 Or 260, 666 P2d 1316 (1983). Fortunately the majority does not resurrect this approach.

An independent analysis under a state constitution is

exemplified by the Washington Supreme Court's opinion in *State v. Ringer,* 100 Wash 2d 686, 674 P2d 1240 (1983), which also involved searches of vehicles after their drivers had been arrested and handcuffed outside the vehicles. The decision rejected the same arguments made by the state here. Justice Dolliver's opinion for the court noted that, beginning in the 1960s,[15] the Washington decisions began to follow the United States Supreme Court's fourth amendment doctrines in applying Washington's constitution, disregarding the state's own law. Returning to the common-law origins of searches incident to arrest, the *Ringer* court stated that the exception "began as a narrow rule intended solely to protect against frustration of the arrest itself or destruction of evidence by the arrestee," and that this was its scope when the Washington constitution was adopted. 100 Wash 2d at 698. The court also observed that it early had refused to recognize a "so-called 'automobile exception' for nonexigent searches."[16] I do not suggest, and I do not cite *State v. Ringer* to suggest, that old cases or understandings contemporaneous with the adoption of a constitutional text place its interpretation and application beyond further development. But the development must respect the logic of its premises.

## II.

The conditions of law enforcement have changed since the adoption of the fourth amendment and its state counterparts in the 18th and 19th centuries. The notion of crime as an exceptional and abnormal event calling for a judge to authorize someone to seize a known offender or to search

---

[15]The United States Supreme Court's caselaw with respect to search and seizures in the setting of everyday state and local law enforcement proliferated only after *Ker v. California,* 374 US 23, 83 S Ct 1623, 10 L Ed 2d 726 (1963).

[16]The court quoted from *State v. Gibbons,* 118 Wash 171, 187-88, 203 P 390 (1922):

" '[M]anifestly the constitutional guaranty that "no person shall be disturbed in his private affairs, or his home invaded, without authority of law," protected the person of appellant, and the possession of his automobile and all that was in it, while upon a public street of Ritzville, against arrest and search without authority of a warrant of arrest, or a search warrant, as fully as he would have been so protected had he and his possession been actually inside his own dwelling; that is, his *"private affairs"* were under the protection of this guaranty of the constitution, whether he was within his dwelling, upon the public highways, or wherever he had the right to be.' "

*State v. Ringer, supra,* 100 Wash 2d at 700-701. (Emphasis in original.)

for him or for stolen goods in a specified place may never have been accurate. In this century, those simple assumptions have undergone radical changes. The growth of cities and the use of automobiles and airplanes gave offenders new mobility and anonymity. Law enforcement was delegated to and administered by large police organizations, and governments chose to rely on criminal law in attempts to control first alcohol and then other drugs by prohibitions on production, trade, possession, and use that depend on finding, seizing, and identifying evidence without the aid of a victim. The entire process still is legally required to be supervised by judges, but the task is no more popular with courts than it is with law enforcement officers.

Three devices can be tried to evade the warrant requirement. One is to deny that it exists, on the theory that under the constitutional text warrantless searches need only be "reasonable," and that only warrants must be based on probable cause and particularly describe the place to be searched and the person or thing to be seized. This theory would obliterate the use of warrants, because officers could search anywhere and seize anything without a warrant and without probable cause as long as their conduct could be defended as "reasonable." Neither the United States Supreme Court nor this court has accepted that reading of the guarantee.[17]

A second device for evading the warrant requirement is to create or expand exceptions for searches or seizures that of necessity must be made without awaiting a warrant (specifically searches of an arrested person or for items that an officer cannot keep under control) beyond their original and necessary scope. The majority's "*per se* exigency" exception for vehicles stopped in transit, irrespective of actual exigency in the individual case, is such a device.

A third device is to manipulate what constitutes a "search" requiring a warrant. In ordinary speech, "search" connotes a purpose or intention of the searcher; one searches whenever one acts with the aim of finding something. But it has long been held that purposeful looking or listening alone

---

[17]The historical case against the theory is reviewed in Grano, *Rethinking the Fourth Amendment Warrant Requirement,* 19 Am Crim L Rev 603, 617-21 (1982).

does not make unlawful a warrantless search of what can be seen in plain view or overheard without the aid of technical enhancement. *See, e.g., State v. Louis,* 296 Or 57, 672 P2d 708 (1983). In recent years, the United States Supreme Court has taken a concept first developed to carry the protections of the fourth amendment beyond trespass law, the concept of "privacy," and has used it instead to limit the requirement of warrants for what otherwise are conventional "searches" by denigrating "expectations of privacy" in containers or other private property in various settings, such as automobile trunks.

The "privacy" device need not be dissected in detail here, since the majority does not adopt it. In essence, however, "privacy" relativism only reinvents the relativism of "reasonableness" under another label. Under the constitutional warrant clauses, downgrading "privacy" in automobiles fails as a limiting device; for if one's privacy interests, though described as "diminished," suffice to recognize the investigatory conduct as a "search," the warrant clauses require probable cause and a warrant. If the conduct is not a "search" in the legal sense at all, then not only is no warrant required but neither is probable cause or even "reasonableness" under the first clause of the constitutional texts. *See* Gardner, *Searches And Seizures Of Automobiles And Their Contents: Fourth Amendment Considerations In A Post-*Ross *World,* 62 Neb L Rev 1, 13 (1983). Sliding-scale "privacy" cannot logically rationalize when a search may and when it may not be made without a warrant, nor can it in practice guide police officers, prosecutors, and trial courts in a new factual setting until its degree of privacy has been calibrated by an appellate opinion. The court is right not to start down that road.

Cases on warrantless searches and seizures of vehicles and of various containers involve enough variables to allow almost any precedent to be distinguished in a later case, variables that have been thought decisive in some opinions. (1) The vehicle to be searched may be stopped by the police, or it may already be stationary. (2) The vehicle may be movable at will or it may be physically immobilized. (3) The purpose of the stop may be related or unrelated to the search. (4) The object of the officer's intervention may be the driver or a passenger. (5) The driver, passenger, owner, or other possessor of a vehicle may be subjected to arrest, or only cited, or

not at all related to the probable cause for the search. The same is true of persons found in possession of suitcases, shipping boxes, or other containers. (6) Such containers are variously found in private premises, in private vehicles, in the possession of common carriers or in warehouses. (7) The vehicle may itself be the object, not only the site, of the officer's investigation. (8) The vehicle may be on residential property, on privately owned parking premises, or on a public road. (9) An officer may have probable cause to believe either that a vehicle or that a container holds items subject to seizure, and the belief may result from his own observation or from other information of the contents. (10) The officer may or may not have used instruments beyond his own natural senses. (11) The objects of the search or the seizure may or may not be intrinsically dangerous or ephemeral. Finally, (12) the jurisdiction may have enacted one or another law governing the officer's conduct.

Faced with the myriad combinations and permutations of these variables, one may retreat into matching the facts of each new case to the accumulating mass of prior holdings in the faith that some rational system will emerge from the empirical experience even if not from the opinions. The experience shows that faith to be misplaced. Opinions of the United States Supreme Court or individual justices have stated about the Court's vehicle search cases, in 1971 that "no trick of logic will make them all perfectly consistent";[18] in 1973, with similar understatement, that the cases formed "something less than a seamless web;"[19] and with more exasperation in 1982: "The law of search and seizure with respect to automobiles is intolerably confusing. The Court apparently cannot agree even on what it has held previously, let alone how these cases should be decided."[20] One scholar put his finger on the problem: "After more than fifty years of search and seizure litigation, neither federal nor state courts have established a satisfactory conceptual framework for analyzing the rather basic issue of when prior judicial approval is required to validate a search." Grano, *Rethinking*

---

[18]*Coolidge v. New Hampshire,* 403 US 443, 483, 91 S Ct 2022, 29 L Ed 2d 564 (1971).

[19]*Cady v. Dombrowski,* 413 US 433, 440, 93 S Ct 2523, 37 L Ed 2d 706 (1973).

[20]*Robbins v. California, supra,* 453 US at 430 (Powell, J., concurring).

*the Fourth Amendment Warrant Requirement,* 19 Am Crim L Rev 603 (1982). What the life of the law of search and seizure needs is more logic, not more experience.

## III

The state offers two theories to defend the warrantless searches of the closed automobile trunks in these cases and, in *State v. Bennett,* 301 Or 299, 721 P2d 1375 (1986), of the closed containers found in the trunk. One theory is that these searches required no warrant because they were "incident" to an arrest of the drivers. The other theory is that there should be an "automobile exception" to the warrant requirement. The Court accepts a version of the second theory. The holdings cannot be justified on either theory.

*"Search incident to arrest."* Because the Court does not rest its holdings on a theory of warrantless searches of car trunks "incident to arrest," the inadequacy of that theory requires only a brief statement.

"Search-incident-to-arrest" has become one of those legal talismans that, although it is in English rather than Latin, has left its rationale behind. What justifies a warrantless search of a person under arrest is not that there is probable cause to believe that the person has committed a crime. It is not that an officer who has valid reason to make an arrest also has valid reason to search for evidence of the crime for which he makes the arrest. If reasons sufficient for an arrest by themselves sufficed to dispense with a search warrant, the actual arrest would be immaterial and unnecessary for the search. That obviously is not the law.

To the contrary, an arrest is the crux of a "search-incident-to-arrest." By definition a search "incident to" an arrest is a warrantless search that is justified by the fact that a suspect is arrested. The justification arises from the practical consequences of taking a person into custody, and it cannot extend beyond those practical consequences if the fact of the arrest is its premise. This rather self-evident proposition is demonstrated by assuming two variations from the typical case.

First, a person need not be in custody in order to be prosecuted. ORS 133.045 to 133.100 allow citations in lieu of arrest for most violations, for all misdemeanors, and for many

felonies. Probable cause to believe that the suspect has committed a crime is required for a citation as much as for an arrest. But no one maintains that Oregon law authorizes an officer to conduct a warrantless search of a person or a person's house, papers, or effects by virtue of or "incident to" issuing a citation, although the crime, the officer's knowledge, and the relevance of potential evidence are identical as in an arrest. The statutes assume that citation and arrest are equivalent means to initiate a prosecution, differing only according to the need to restrain the suspect. A doctrine that illogically extends a "search-incident-to-arrest" beyond the practical needs of custody to allow investigatory searches without a warrant contradicts that policy. Instead, it puts a premium on arresting the suspect, and if possible doing so in a place that officers wish to search for evidence.

Second, the statutes allow a "private person" as well as a "peace officer" to effect an "arrest," ORS 133.220, which means "to place a person under actual or constructive restraint or to take a person into custody for the purpose of charging that person with an offense." ORS 133.005(1). No doubt a private person lawfully taking another person into custody may safeguard himself and items in the suspect's immediate possession that relate to the crime for which he makes the arrest. But would the state argue or a court hold that a "citizen's arrest" authorizes a "citizen's search" of an automobile trunk for proof of a crime, beyond any needs attendant on the arrest itself?

Possibly for these reasons, the majority does not justify the searches of the automobile trunks in this case and *Bennett* as incidents of the arrests. In a given situation some other necessity, generically labeled "exigent circumstances," may permit a search or a seizure on probable cause without first obtaining a search warrant, regardless whether anyone is arrested. But if the fact of an arrest is to make the difference between a permissible and an impermissible warrantless search, the difference must arise from the necessary consequences of taking a person into custody. The fact of an arrest alone cannot logically bootstrap officers into any wider warrantless search than they could conduct without making the arrest.

*Exigency.* Seeking the less untenable between two

unsatisfactory theories, the majority embarks on rationalizing warrantless searches of automobiles as a new "exigent *per se*" exception to Oregon's constitutional requirement of search warrants. The premise is that the mobility of a motor vehicle does not allow time to obtain a warrant to search it. Dating from *Carroll v. United States,* 267 US 132, 45 S Ct 280, 69 L Ed 543 (1925), it begins as an application of the wider exception that "exigent circumstances" can make a search or seizure conducted without awaiting a warrant, but with probable cause, not "unreasonable."

The majority opinion leaves important questions unaddressed. In order to narrow the new rule, the exception applies only when officers have lawfully stopped the vehicle while in motion. This seems to reintroduce the idea that the search relates to the officers' authority to detain the occupants traveling in a moving vehicle, an idea similar to a search "incident" to an arrest, although apparently no "arrest" in the statutory sense of "taking into custody" is required. It certainly reintroduces the problem of "pretext" stops and of the relationship between the grounds for the stop and the scope of the subsequent search.[21]

The present case does not hold that probable cause to search a car for evidence of a crime unrelated to motor vehicle laws is itself sufficient reason to make a "lawful stop." But officers apparently may be instructed that if they have probable cause to believe that a stationary vehicle contains items subject to seizure but have not obtained a search warrant, they should keep the vehicle under surveillance until someone begins to drive it away and then find an opportunity to make a lawful stop. If in some future case it appears that officers waited for that to happen longer than it would have taken to obtain a warrant, courts will once again have to narrow the "exigent *per se*" exception for automobile searches.

A well-advised felon who does not want his car searched, in turn, should learn to pull to the side of the road when he sees a police vehicle before the officers have a chance to stop him. If stopped, apparently he should remove any briefcase or other bag some distance from the car before the

---

[21]*See State v. Carter/Dawson,* 287 Or 479, 600 P2d 873 (1979), and the prior discussion by the Court of Appeals in that case, 34 Or App 21, 578 P2d 790 (1978).

officers begin their search of the car, as long as the search of a car is what allows searching a closed container in the car, as the majority holds. The sense of these rules will not be apparent to the ordinary citizen or officer, and they have little to do with "exigency." They do not strike me as clear and certain rules for which to sacrifice the constitutional requirement of a search warrant.

The fatal flaw in the majority's position is its statement that "exigencies should not be determined on a case-by-case basis." Exigencies are emergencies, circumstances that require urgent action; of course they arise case by case. The majority's desire to rest its disregard of the warrant requirement on the exception for exigent circumstances and also to give police officers general permission for warrantless searches of automobiles irrespective of actual exigency leads only to an unresolved contradiction.

It is possible to state "guidelines," in the majority's word, for the kinds of circumstances that preclude waiting for a warrant before conducting a search of an automobile or of anything else so as to make it reasonable to proceed without a warrant. Such guidelines, however, must describe conditions of actual exigency, not whole classes of objects such as vehicles that have been stopped. If anyone is to legislate for automobiles generally, it should be persons politically elected for that task (or the voters themselves), not this court. As a statement about "exigency," the proposition that it always, or generally, is impossible to obtain a warrant to search a vehicle after it has been stopped in transit is simply contrary to fact, especially in cases where the occupants have been placed in custody outside the vehicle.

## IV.

The principle that prior judicial authorization for a search must be the rule and warrantless searches a narrowly confined exception should be more than a comforting fable in appellate opinions, but in practice it is no more than that. According to a recent study by the National Center for State Courts, this appears from a number of examinations of search warrant practices over the past quarter century. Van Duizend, Sutton, & Carter, The Search Warrant Process x (1984). The authors of the study reported:

"The vast majority of searches are conducted without a warrant, usually with the consent of the suspect (or someone in legal control of the area to be searched) or incident to the arrest of the suspect. Delay and inconvenience were widely cited as the principal basis for officers' reluctance to seek a search warrant.

"* * * * *

"We also were told of a host of other strategies that police use to conduct a search without having to go to the trouble of obtaining a warrant, such as by timing an arrest so as to maximize the possibility of being in a position to conduct a search legally and seize any contraband that might be discovered as a result (e.g., by arresting suspected drug dealers in their cars rather than at home)." *Id.* at 19 (footnote omitted).

For Portland, Oregon, the study reported 41,303 "index crimes" in 1980 and only 319 search warrants. *Id.* at 18.[22]

*Facilitating warrants.* The majority's *"per se* exigency" exception for warrantless searches of vehicles stopped in transit cannot rest on a theory that holding the vehicle until a warrant is obtained (in the absence of consent to search) always is impossible, when in fact it is only burdensome, slow, expensive, and administratively inconvenient, given the large number of such vehicle stops and the limited resources of police and courts. At the end of its opinion, the majority notes that modern technology offers the means to overcome practical obstacles to compliance with the constitutional warrant requirements and sets out a plan for doing so. 301 Or at 278 n 6. I welcome this initiative toward restoring reality to the recitations that the constitution requires warrants for searches and seizures to be the rule and warrantless searches true "exceptions." As I observed at the outset of this opinion, the suggestion serves as a reminder that the majority's newly defined "Oregon automobile exception" is a transitory accommodation and is open to future reconsideration.

---

[22] "Index crimes," the major offenses included in the FBI's Uniform Crime Report, were murder, non-negligent manslaughter, forcible rape, robbery, aggravated assault, burglary, theft, motor vehicle theft, and arson. The addition of drug offenses would substantially increase the number of warrantless searches, especially those associated with automobile stops. *See State v. Lowry, supra,* 295 Or at 341.

Nevertheless, it does not persuade me that under current conditions the new exception is justified by true "exigency." The technology for communicating and recording affidavits and judicial warrants issued thereon exists today.[23] If lack of official personnel and equipment in fact precludes obtaining a speedy warrant, this is the government's (including the Judicial Department's) responsibility, not that of the individual citizen. We are dealing with the constitutional rights of all drivers, passengers, or owners of vehicles, not only with searches in which evidence of unlawful conduct in fact is found. A person whose automobile is stopped by police officers and who does not wish to consent to a search of its trunk (or of any other "effect") should not have to dispense with the protection of a judicial warrant because the state does not provide enough readily accessible officials and processes to seek such warrants. Officials, equipment, and procedures will be provided more expeditiously when this court enforces the warrant requirement than when it holds that a warrant may be omitted whenever the procedures for getting a warrant are slow and inconvenient for everyone concerned.

*Consent or seizure.* Although of the devices for evading the warrant requirement, the "exigency" theory of the majority opinion is the least untenable, its extension to all stopped automobiles rests on a faulty assumption. The majority writes that to conduct an immediate on-the-scene search of a vehicle stopped by the police is no greater intrusion than to hold the vehicle until a warrant is obtained. The same argument could be made for searching other movable private effects, effectively reducing the practical use of search warrants to houses and other immovable objects.

The faulty assumption is that the court must choose between the "intrusiveness" of an immediate search and of a temporary seizure to await a warrant and must make that

---

[23]The study for the National Center for State Courts, Van Duizend, Sutton, & Carter, The Search Warrant Process 84-87 (1984), describes a procedure used in a city identified only as "Border City" which involves a supervisor and a deputy prosecutor as well as the officer in the field in the process of obtaining a telephonic warrant, with the magistrate able to hear the officer's answers to the lawyer's questions and, although rarely, to interrupt for clarification. The transmissions are taped and transcribed. The mobile telephones required to do this from the site of a vehicle stop already are generally available to police officers; what is needed are easily available lawyers and trained magistrates.

choice as a categorical matter of law. That is not so. The obvious, and correct, alternative is that the choice belongs to the person whose constitutional interests are at stake. An officer reasonably believing that he has probable cause to search an automobile trunk in the presence of the owner or driver can offer the person an informed choice between consenting to an immediate search or having the automobile held for the time necessary to obtain a warrant.

This is even more obviously true of bags or other closed containers. The person, not the officer, is the one to decide whether to insist on the right to have the supposed probable cause tested by a magistrate and to accept the inconvenience of the necessary seizure. There simply is no basis for this court or any court to make such a categorical choice for all owners of automobile trunks or closed containers found in automobiles as a class.[24] If a person insists on the required warrant, there well may be exigent circumstances for a seizure when there are none for searching a container after it has been seized. Because I believe that there is no "exigency *per se*" for searching the trunks of all automobiles stopped by police officers, *a fortiori* there is no such justification for opening closed bags or packages found therein.

## V.

I return to what I wrote in *State v. Greene, supra.* The uncertainty of police authority to stop, to question, and to search persons and their belongings — the confusion about which the Chief Justice complains — represents a failure of lawmaking. It is not, in the first instance, a failure of the courts, because lawmaking for the exercise of executive power should not be left to courts in the first place. Investigatory and enforcement powers of state agencies other than criminal law enforcement rest on and are governed by laws, and there is no good reason why investigatory and enforcement powers over

---

[24]If there had to be a judicial choice, Justice John Marshall Harlan asserted that "the lesser intrusion will almost always be the simple seizure of the car for the period — perhaps a day — necessary to enable officers to obtain a search warrant." *Chambers v. Maroney,* 399 US 42, 63, 90 S Ct 1975, 26 L Ed 2d 419 (1970)(Harlan, J., dissenting). If one regards a search as less intrusive, Justice Harlan wrote, "a person always remains free to consent to an immediate search, thus avoiding any delay." *Id.* at 64. The majority in that case did not assert the opposite but only that which intrusion is the "lesser" is a debatable question that "may depend on a variety of circumstances." *Id.* at 51-2.

persons for potential criminal prosecution, of all things, should be less dependent on laws than, for instance, authority to inspect a restaurant for cockroaches. The laws may be statutes, home rule charters, ordinances, or rules made by delegation from any of these, as long as they can be traced back to politically elected lawmakers or to the voters themselves. Many executive officials also are elected and politically accountable, particularly in Oregon, but they are not elected to define and authorize their own authority over private persons and property.

Yet we continue to see fallacious arguments that police have this or that authority because a court has held that the conduct at issue does not violate the state or the federal constitution. Courts do not authorize executive actions; laws do. A court on its own can authorize law enforcement actions (aside from carrying out orders of the court) only by the warrants authorized by the constitution in Article I, section 9.

Of course any law authorizing executive action, such as a search or a seizure, must comply with the constitution. Because courts, with more or less enthusiasm and success, have sought to apply the constitutional limits on government actions in individual cases, both lawyers and lay citizens have come to see questions of police practices as if they were a controversy between law enforcement officials and courts. Proposals for systematic lawmaking have met with arguments, often from lawyers, to "leave it to the courts," and legislators, with enough other controversies clamoring for their attention, have understandably been pleased enough to do just that.[25]

The majority traces its "automobile exception" from *Carroll v. United States, supra.* The Chief Justice asserts that *Carroll* "was and is good law." Neither opinion notes or discusses the fact that *Carroll* sustained a search authorized by a statute, a section of the National Prohibition Act. The policy

---

[25]The need for legislative clarification of police authority to undertake warrantless searches or seizures was recognized by the Oregon Criminal Law Revision Commission, which included numerous provisions on this subject in its proposals to the legislature. *See* Proposed Oregon Criminal Procedure Code (Final Draft and Report, 1972); Platt, *A Legislative Statement of Warrantless Search Law: Poaching in Sacred Judicial Preserves?,* 52 Or L Rev 139 (1973). Most of the warrantless search and seizure provisions were not adopted.

to authorize seizures of vehicles transporting intoxicating liquors was debated and enacted by Congress, not by the Supreme Court. What the *Carroll* court did was to sustain the statutory authority to search on the ground that similar statutes were enacted contemporaneously with the fourth amendment.[26]

Clear and reliable rules for police conduct are desirable, as long as they do not violate the constitutional right of the people to be secure in their persons, houses, papers, or effects, against unreasonable, warrantless searches or seizures. Perhaps a law authorizing such acts can be sustained if its reach stays within constitutional bounds in the great majority of situations, and cases in which its application crosses the boundary can be dealt with by statutory interpretation or individualized decisions. *Cf. State v. Moyle,* 299 Or 691, 705 P2d 740 (1985), for a similar analysis under the free speech guarantee of Article I, section 8. But what should a court do when lawmakers make no such laws?

In his concurring opinion to *State v. Bennett,* 301 Or 299, 721 P2d 1375 (1986), the Chief Justice lists six possible rules to govern warrantless searches of automobiles and their contents. 301 Or at 306. Any of these is as clear and workable as any other. The test of a court is whether, in the absence of legislative direction, the court chooses individual liberty or executive power.

Regrettably the majority chooses to subordinate individual liberty. It states a rule in the name of "exigency" that goes beyond any actual need to dispense with a warrant in many circumstances. In pursuit of clear rules for the most basic confrontation between the government and the citizen, the majority is prepared to err on the side of the government and leave to legislators the burden to redress the balance if they so choose.

My view is the opposite. Like the Chief Justice and

---

[26]Supreme Court decisions scrutinizing searches by state officers, which began only 25 years ago with *Mapp v. Ohio,* 367 US 643, 81 S Ct 1684, 6 L Ed 2d 1081 (1961), could only test the search directly under fourth amendment standards of fourteenth amendment due process; such decisions necessarily assume that the actions of state officers are authorized under state law.

the majority, I also favor clear, practical rules for law enforcement actions. The simpler a rule is, however, the more it is likely to include some actions that the constitution forbids or to exclude some actions that constitutionally could be authorized. It is one thing for a court to give operational effect to a constitutional guarantee by "bright line" standards that are more protective in some instances than the guarantee strictly requires and let the legislature enact a different rule if it disagrees. But it is wrong for a court, as this court does today, to push "bright line" rules into a domain that includes many cases not defensible by constitutional premises, inviting legislators to take away governmental powers that the court has granted. It is the government that must ask lawmakers for authority against the citizen, not the citizen that must ask lawmakers to enact laws against "inherent" official power.

As I have said, today's decision contemplates eventual change by the modernization of warrant procedures of which the majority writes. A rule that rests on a fiction, like today's rule of "*per se* exigency," has a limited life expectancy. The source of the governing premises remains the constitutional guarantee of a judicial warrant stated in Article I, section 9, enacted by the people in 1859, not what judges write about it. The guarantee will remain for future judges to apply, as long as the people do not choose to amend the constitution to sacrifice that guarantee. I would not sacrifice it on their behalf in the name of efficiency. I therefore dissent.

Lent, J., joins in this dissenting opinion.