Argued and submitted November 7, 1994, reversed and remanded January 4, 1995

# STATE OF OREGON,
*Appellant,*

*v.*

# RICK EARL WALIGORSKI,
*Respondent.*

(93-07-35053; CA A82736)

888 P2d 100

Ann Kelley, Assistant Attorney General, argued the cause for appellant. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Curtis A. Shelton argued the cause and filed the brief for respondent.

Before Richardson, Chief Judge,* and De Muniz and Leeson, Judges.

LEESON, J.

---

* Richardson, C. J., *vice* Rossman, P. J., retired.

## LEESON, J.

In this criminal proceeding charging defendant with possession of a controlled substance and unlawful possession of a firearm, the state appeals from a pretrial order granting defendant's motion to suppress evidence. The state contends that the trial court erred in concluding that defendant's unlawful restraint required the court to suppress the evidence discovered in his car. We reverse.

On July 25, 1993, at about 1 a.m., Gresham Police Officer LeDuc saw defendant's car speed out of an apartment complex parking lot and then twice cross the center line of the street.[1] LeDuc stopped defendant's car, parked behind it and asked him for his driver's license, proof of insurance and car registration. Defendant produced a valid Oregon identification card and admitted that his license was suspended and that he did not have proof of insurance or car registration. After completing a record check, LeDuc decided that he would not issue defendant a citation, but that he would give him a warning and admonish him not to drive. LeDuc told defendant that he was free to go.[2]

LeDuc then told defendant that he would like to talk with him and asked defendant if he would mind getting out of his car. Defendant agreed, and they moved onto the sidewalk, several feet from defendant's car. LeDuc explained that he saw defendant coming out of an apartment complex where drug activity frequently occurs and asked him why he was there. Defendant said that he was there to see a woman to ask her out on a date. LeDuc next asked defendant if he would consent to a search of his person, and defendant agreed. LeDuc discovered a "wad" of money in defendant's pants pockets, saw needle marks that were three days to a week old on one of his arms, and detected an odor consistent with methamphetamine. Defendant told LeDuc that he had won the money playing video poker at a tavern.

About four to five minutes after LeDuc stopped defendant, Officer Hansen and a trainee arrived, parked

---

[1] Defendant did not testify at the suppression hearing; the facts were derived exclusively from the testimony of the police officers.

[2] The trial court concluded that the stop ended at this point.

behind LeDuc's patrol car and joined LeDuc and defendant. LeDuc informed defendant that "we are going to search your car." Defendant stated that he did not want the officer to search his car, explaining that he had previously been set up by the Roseburg police in a similar situation. Hansen nonetheless walked over to defendant's car. He shined his flashlight through the windows and noticed a stick with an attached strap and a screw imbedded on one end. He reported this to LeDuc, who was still standing on the sidewalk with defendant. LeDuc testified that defendant had become nervous and somewhat agitated, so he asked defendant if he would mind sitting in the back of the patrol car. Defendant asked if he was under arrest, and LeDuc replied that he was not and that he did not have to sit in the patrol car if he did not want to. Defendant agreed to sit in the patrol car, and LeDuc walked to the car with him. Defendant was not handcuffed.

Hansen continued to peer into defendant's car and, within a few seconds, saw a portion of a small plastic bag containing what he believed to be methamphetamine. He shouted something like, "Bingo." By that time, defendant was sitting in the back of Hansen's patrol car.[3]

After seeing the plastic bag, Hansen opened the car door, took out the bag and examined the contents. He concluded that it contained methamphetamine. Hansen continued his search of the car's interior and discovered a handgun inside the "jockey box" between the front seats. Hansen and LeDuc then informed defendant of their discovery, arrested and handcuffed him and continued to search his car. LeDuc discovered behind the driver's seat a jacket that had a small plastic container of methamphetamine in its pocket. Defendant later admitted that he owned the jacket.

Defendant was charged with possession of a controlled substance, delivery of a controlled substance and unlawful possession of a weapon. Before trial, he moved to suppress all evidence, arguing that the police exceeded the scope of the traffic stop and that he was illegally arrested. The trial court found that defendant was lawfully stopped for a traffic infraction, that he voluntarily consented to a search of

---

[3] Hansen testified that the door to his patrol car was shut, but LeDuc said the door was open and that the trainee was standing guard next to it.

his person, and that he clearly and emphatically refused to give his consent when LeDuc told him that he was going to search the car. The trial court concluded that defendant manifested a privacy interest in the car and that Hansen's use of a flashlight to look into the car was a search. The court also concluded that defendant was "constructively restrained" when he was in the police car. Finally, the court concluded that the officers did not have probable cause to arrest or detain defendant or to search his car. The court ruled that the restraint was illegal and that the evidence resulting from the search should be suppressed.

On appeal, the state makes several arguments, the dispositive one being that the evidence discovered in defendant's car did not result from the officers' restraint of defendant. It contends that the restraint and discovery of the evidence were independent and unrelated events. Defendant does not argue that the use of the flashlight to aid in Hansen's observation of the objects in the car was an unreasonable search. His sole argument is that his unlawful arrest "effectively dispossessed him from his car" and that the officers took advantage of that opportunity to search his car. He contends that all evidence derived from the car was tainted by the unlawful arrest and must be suppressed.

We need not decide whether the restraint of defendant was unlawful, because we reject defendant's argument that his restraint gave the officers an uninterrupted opportunity to search his car. The interval of time between defendant's agreement to sit in the patrol car, parked two car lengths behind his own car, and the discovery of the bag containing methamphetamine was so brief that his restraint was unrelated to the discovery of the evidence; it did not aid the police by providing them any additional time to search. Once Hansen saw the bag that he suspected contained methamphetamine, he had probable cause to search defendant's car and to seize the evidence. *State v. Brown*, 301 Or 268, 276, 721 P2d 1357 (1986).

Reversed and remanded.