Submitted on remand from the Oregon Supreme Court February 14, reversed and remanded March 28, petition for review denied November 8, 2012 (352 Or 665)

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**AMY MICHELLE GROOM,**
*Defendant-Appellant.*

Marion County Circuit Court
08C42589; A142179

274 P3d 876

Jason E. Thompson and Ferder Casebeer French & Thompson, LLP, for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Douglas F. Zier, Assistant Attorney General, for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

This case is before us on remand from the Supreme Court. In our first opinion, we accepted the state's argument that the warrantless search of defendant's automobile was lawful because it fell within the contours of the automobile exception to the warrant requirement. *State v. Groom*, 239 Or App 462, 244 P3d 913 (2010). In reaching that conclusion, we relied on *State v. Kurokawa-Lasciak*, 237 Or App 492, 239 P3d 1046 (2010). The Supreme Court subsequently reversed *State v. Kurokawa-Lasciak*, 351 Or 179, 263 P3d 336 (2011), and remanded this case for reconsideration. We now conclude that the warrantless search of defendant's automobile was not within the automobile exception as explained by the Supreme Court in *Kurokawa-Lasciak*. We also reject the state's alternative arguments for justifying the search. Consequently, we reverse and remand.

We take the facts from our original opinion:

"A Keizer police officer, Carroll, ran a Department of Motor Vehicles check on a vehicle that he was following and determined that the registered owner had an outstanding warrant for a drug offense. By the time Carroll discovered the outstanding warrant, the vehicle had turned down a side street, and the officer had to turn back to look for it. When he located the vehicle, it was parked and two women were standing beside it on the sidewalk.

"Carroll approached the two women and asked them for their identification. Although she initially denied having identification [and gave the officer a name which, he later discovered, was false], eventually, defendant identified herself as the owner of the vehicle. She was, in fact, the subject of the warrant. Carroll then arrested her, placed her in the back of his patrol car, and asked her for consent to search her vehicle. She refused. An officer then radioed a request that a drug dog be sent to the scene.

"At that point, another officer who was present, Goodman, noticed a man in the back seat of defendant's vehicle. The officers identified the man and determined that he was on post-prison supervision relating to drug offenses. After the man got out of the vehicle and was patted down, the officers noticed an apparently freshly deposited 'bindle' (a plastic baggie commonly used to carry drugs) on the ground

near the vehicle. The bindle was tested and found to contain methamphetamine residue.

"After discovery of the bindle, defendant was advised of her *Miranda* rights and told that a drug dog had been called to the scene and, in response, she acknowledged that she had been the driver of the vehicle and that officers were likely to find drugs inside it. When the drug dog arrived, it alerted to the door of the vehicle. Officers then sent the dog into the car and it alerted to defendant's purse. Carroll opened the purse and inside found the drugs and other evidence at issue in this case."

*Groom*, 239 Or App at 464-65. We cited *Kurokawa-Lasciak* for the proposition that police can search a parked vehicle if it was moving when the police first encountered it, even if, at that time, police had no suspicion of criminal activity. *Groom*, 239 Or App at 466 (citing *Kurokawa-Lasciak*, 237 Or App at 497-98). Applying that rule, we held that, because the defendant's car was moving when Carroll first saw it, the automobile exception applied and the search was lawful even though probable cause developed only after the car was stopped. *Groom*, 239 Or App 466-67.

In its opinion reversing our *Kurokawa-Lasciak* decision, the Supreme Court clarified the scope of the automobile exception, holding that it applied only when the automobile was moving when police first encountered it "in connection with a crime." 351 Or at 192. Under that rule, defendant in this case is correct in her assertion that the search of her car was not justified by the automobile exception. When Carroll first encountered the car, it was moving, but the encounter was not "in connection with a crime"; rather, Carroll was merely randomly "running" license plates. The nexus with crime arose only later, after he learned that the car's registered owner had an outstanding arrest warrant, defendant gave the officer a false name, one of the occupants apparently dropped a bindle of drugs on the ground, and a police dog alerted to the presence of drugs in the car.[1] The search was not lawful under the automobile exception.

---

[1] We are not required in this case to determine when, exactly, the encounter became one that was "in connection with crime" nor whether some level of reasonable individualized suspicion is necessary for that connection to justify an automobile search.

The state argues that, even if the search did not fall within the automobile exception, it was nonetheless justified under two other exceptions: "exigent circumstances" and "search incident to arrest." The state made neither of those arguments at trial and neither formed the basis of the court's denial of defendant's motion to suppress. However, as the Supreme Court explained in *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001), we may affirm the trial court based on alternative arguments not made before it—the so-called "right for the wrong reason" doctrine—if we conclude:

"(1) that the facts of record [are] sufficient to support the alternative basis for affirmance; (2) that the trial court's ruling [is] consistent with the view of the evidence under the alternative basis for affirmance; and (3) that the record materially [is] the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below. In other words, even if the record contains evidence sufficient to support an alternative basis for affirmance, if the losing party might have created a different record below had the prevailing party raised that issue, and that record could affect the disposition of the issue, then we will not consider the alternative basis for affirmance."

(Emphasis omitted.) Under those precepts, we reject the state's alternative arguments.

Police may conduct a warrantless search based on probable cause when exigent circumstances exist. "Exigent circumstances include, among other things, situations in which immediate action is necessary to prevent the disappearance, dissipation, or destruction of evidence." *State v. Meharry*, 342 Or 173, 177, 149 P3d 1155 (2006). The state argues that the exception applies in this case because

"defendant asked the officers about the passenger's driving status—presumably as a basis to request that the police release the vehicle to her passenger to drive from the scene. In addition, the male passenger remained present at the scene, making it highly likely that one or the other of these passengers would take the vehicle."

As the conditional language of this argument demonstrates—"presumably," "highly likely"—on the record as it

was developed at trial, it is impossible to know whether either of the passengers was, in fact, still present when the search occurred, whether either of them had a valid driver license, whether defendant would have given either of them the keys, or whether either of them was ready, willing, and able to drive the car (and the evidence) away. The facts of record, in other words, are not sufficient to form the alternative basis. Further, had the state made an "exigent circumstances" argument, the facts would likely have developed differently.

Police may also conduct a warrantless search incident to the lawful arrest of a suspect. The justification for this exception to the warrant requirement is that such searches are necessary in order to protect the arresting officer in case the suspect has a weapon within reach and to prevent the suspect from reaching and destroying evidence. *State v. Caraher*, 293 Or 741, 759, 653 P2d 942 (1982). In addition, a search incident to arrest is lawful if it is "relevant to the crime for which defendant is being arrested and so long as it is reasonable in light of all the facts." *Id.* Regardless of the justification, however, the search must be reasonable in time, space, scope, and intensity. *State v. Owens*, 302 Or 196, 205, 729 P2d 524 (1986). The facts of record establish that the search of the car did not meet those criteria. It occurred approximately an hour after defendant was arrested, during which the police made no attempt to obtain a warrant; that is an unreasonable amount of time and not within the permissible time frame. Further, the interior of the car was not within defendant's reach at the time of the search, so the search took place beyond the permissible space. *State v. Hite*, 198 Or App 1, 7-8, 107 P3d 677 (2005) (resolving conflict in case law regarding legality of search of car interior incident to arrest of a defendant when defendant is outside of the car; holding such search was not lawfully incident to arrest). In sum, in light of *Kurokawa-Lasciak*, the search did not fall within any exception to the warrant requirement.

Reversed and remanded.