Argued and submitted November 27, 2012, reversed and remanded
February 13, 2013

STATE OF OREGON,
*Plaintiff-Respondent*,

*v.*

JEFFREY JEAN PIRTLE,
*Defendant-Appellant.*

Coos County Circuit Court
10CR0857; A147418

296 P3d 625

Laura E. Coffin, Deputy Public Defender, argued the cause for appellant. With her on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and Haselton, Chief Judge, and Sercombe, Judge.

HASELTON, C. J.

**HASELTON, C. J.**

Defendant, who was convicted of felon in possession of a firearm, ORS 166.270, appeals, assigning error to the denial of his motion to suppress the fruits of a warrantless search of a pickup truck, which yielded the weapon on which his conviction is predicated. Specifically, defendant contends that the search did not fall within the "automobile exception" to the warrant requirement, because the pickup was stopped and, hence, not mobile, at the time that the police initially encountered it "in connection with a suspected crime." *State v. Kurokawa-Lasciak*, 351 Or 179, 192-93, 263 P3d 336 (2011). We agree and, consequently, reverse and remand.[1]

The facts material to our review of the denial of the motion to suppress are uncontroverted. On May 16, 2010, Coos Bay Police Officer Myers went to an apartment complex to investigate a domestic dispute between defendant, who was a convicted felon, and a woman. The dispute "possibly involv[ed] a handgun."

When he arrived, Myers saw another officer, Labrousse, interacting with defendant and defendant's mother, Deborah Pirtle. At that time, a white Toyota pickup owned by Pirtle was parked in front of the alleged victim's apartment, which was located at 151 Norman Street. Myers entered the apartment unit and spoke with the alleged victim, who told him that defendant had a handgun, which he kept in a backpack, and that defendant had had the gun in his possession at the apartment earlier in the day. The alleged victim gave Myers permission to search her apartment for the gun, but the ensuing search was unavailing.

Myers then returned to the parking lot to ask Pirtle (who was seated in the back of a patrol car) for consent to search the pickup for the handgun, because, by that time, he "suspected that the gun was probably in the pickup." However, at the point that Myers sought consent to search, the pickup was no longer parked in its original location, at 151 Norman; instead, the vehicle had been moved, by some

---

[1] Our analysis and disposition obviates any need for discussion of defendant's other arguments.

unknown person, and parked in front of 121 Norman, which was roughly 100 yards away, albeit still within the same apartment complex.

When Myers entered the apartment, Labrousse remained outside. Labrousse took defendant into custody and walked him from 151 Norman to 121 Norman, where Labrousse placed defendant in the back of his patrol car. As Labrousse did so, he saw the Toyota pickup drive from 151 Norman to 121 Norman and park within a few feet of Labrousse's patrol car. At that time—at the time that he saw the pickup truck in motion—Labrousse (in his own words) "did not realize * * * that that was the involved vehicle" (*i.e.*, the vehicle in which defendant's handgun might have been placed).[2]

Ultimately, Pirtle gave her consent to search the pickup, but, after the search had begun and before it yielded any inculpatory items, she rescinded that consent. Notwithstanding that rescission, officers continued the search and found defendant's firearm, a black Masterpiece 9mm pistol.

Defendant was charged with felon in possession of a firearm, ORS 166.270. He moved to suppress the firearm, arguing that the warrantless search of the pickup was unlawful under Article I, section 9, of the Oregon Constitution.[3] Defendant contended, specifically, that the

---

[2] On both direct examination and cross-examination at the suppression hearing, Labrousse reiterated that description of the timing of his observation of the pickup truck in motion relative to his identification of that vehicle as being connected to the criminal investigation. For example, on cross-examination, the following exchange occurred between defense counsel and Labrousse:

"Q. And while you're doing that [*viz.*, placing defendant in the patrol car], you see the vehicle, which you *later determined* is the vehicle you are interested in, being moved?

"A. Yes, sir."

(Emphasis added.)

Myers, for his part, testified that he had seen the pickup moving. However, the record of the suppression hearing, including Myers's testimony, does not disclose whether that observation occurred before or after officers learned that the pickup contained defendant's belongings.

[3] Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no

circumstances of the search did not satisfy the prerequisites of the automobile exception to the warrant requirement. Following a hearing, the court denied the motion, reasoning:

> "I'm satisfied that sufficient mobility is established by the fact of the move in the course—the movement of the truck in the course of the stop. That, I think, is critical here, because if the automobile exception has any merit at all, it's based upon the mobility of the vehicle. * * *
>
> "* * * * *
>
> "* * * [I]n this circumstance, essentially—although it might be by magic—this vehicle is driving away and may contain the evidence that they're looking for. And so[,] in terms of the rationale for the automobile exception, at least from my perspective, it applies in this situation because it clearly is not a case where, for instance, the vehicle parked, remained parked."

Following a jury trial, defendant was found guilty as charged.

On appeal, defendant renews his challenge to the lawfulness of the search of the pickup truck and invokes, particularly, the Supreme Court's explication of the automobile exception in *Kurokawa-Lasciak*, which issued nearly a year after his conviction. In particular, defendant emphasizes the temporal requisites of the automobile exception, which the Supreme Court unambiguously ratified in *Kurokawa-Lasciak*:

> "[T]o qualify for the automobile exception, the vehicle that the police search must be mobile at the time that the police encounter it *in connection with a crime.*"

351 Or at 192 (emphasis added). Defendant contends that the record demonstrates that that temporal requirement was not satisfied here—or, at the very least, that the state, as the proponent of the warrantless search, failed to present evidence establishing that it was satisfied. In that regard, defendant posits that, by the time either Labrousse or Myers knew that the pickup could be connected to the possible

---

warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

assault or felon in possession of a firearm that they were investigating, the pickup was parked at 121 Norman—and, hence, was immobile.

The state responds that defendant's temporal mobility argument was not adequately raised before the trial court. Based on our review of the record of the suppression hearing, and particularly defense counsel's arguments to the court in which he invoked, *inter alia, State v. Kock,* 302 Or 29, 725 P2d 1285 (1986), and *State v. Meharry,* 342 Or 173, 149 P3d 1155 (2006), as well as the trial court's explicit consideration of mobility, we reject that contention without further discussion. With respect to the merits, the state posits:

> "Neither [*Kurokawa-Lasciak*] nor any prior Oregon Supreme Court [decision] ever has held that a vehicle that becomes mobile only during the course of an ongoing criminal investigation is outside the automobile exception. * * * It defies logic that a vehicle (which is immobile when the police begin their criminal investigation) does not come within the scope of the automobile exception when it becomes mobile—and the officers observe this mobility— in the midst of their investigation. Exactly the same exigency—the ease and likelihood of loss of evidence—is present when the immobile auto becomes mobile."

The state also, parenthetically, suggests that the search was alternatively lawful as predicated on Pirtle's consent.

In this case, as in any other involving a warrantless search, the state bears the burden of proof—that is, both of production and persuasion—as to the applicability of an exception to the warrant requirement. *See* ORS 133.693(4) ("Where the motion to suppress challenges evidence seized as the result of a warrantless search, the burden of proving by a preponderance of the evidence the validity of the search is on the prosecution."). Here, viewing the evidence and attendant inferences in the light most favorable to the trial court's denial of suppression, *see Ball v. Gladden,* 250 Or 485, 487, 443 P2d 261 (1968), the state failed to establish that the search of the pickup fell within the automobile exception or was (as of the time of the discovery of the handgun) pursuant to Pirtle's consent.

We begin with the automobile exception. Of dispositive significance here, *Kurokawa-Lasciak* reiterated the essential temporal precondition of that exception under Oregon law. Again: "[T]he vehicle that the police search must be mobile at the time that the police encounter it in connection with a crime." 351 Or at 192.

In adhering to that "bright-line" requirement, which the court in *Kurokawa-Lasciak* noted had first been "dr[awn] in [*State v.*] *Brown*[, 301 Or 268, 721 P2d 1357 (1986),] and *Kock*," the Supreme Court acknowledged "the logic of the state's position—that it is just as likely that a person in control of an operable car will drive off with evidence or contraband as will a person in control of a car that was mobile at the time of the initial encounter and that remains mobile thereafter." 351 Or at 193. Thus, the Supreme Court fully appreciated that, on occasion, that temporal formulation (or, perhaps, any formulation of the automobile exception) could yield incongruous results. Nevertheless, given the dictates of *stare decisis*, the court reaffirmed the vitality of the *Brown / Kock* "bright line." *Id.*

*State v. Groom*, 249 Or App 118, 274 P3d 876 (2012), exemplifies the unconditional dictates of the temporal "bright line." In that case, which had been remanded to us for reconsideration in the light of the Supreme Court's opinion in *Kurokawa-Lasciak, see State v. Groom*, 351 Or 318, 267 P3d 158 (2011), we considered the availability of the automobile exception in circumstances in which (1) police initially saw a vehicle in motion but, at that time, had no basis to connect it to criminal activity, and (2) officers did not identify any "criminal nexus" until later, after the vehicle had been parked. *Groom*, 249 Or App at 119-20. In our original opinion, we held, based on our opinion in *State v. Kurokawa-Lasciak*, 237 Or App 492, 239 P3d 1046 (2010), that the automobile exception applied. In so holding, we concluded that the police could search a parked vehicle if it was moving when the police first encountered it, even if, at that time, police had no suspicion of criminal activity. *State v. Groom*, 239 Or App 462, 466-67, 244 P3d 913 (2010). Following remand, we concluded that the Supreme Court's formulation in *Kurokawa-Lasciak* compelled the opposite result:

"When [the officer] first encountered the car, it was moving, *but the encounter was not 'in connection with a crime'*; rather, [the officer] was merely randomly 'running' license plates. The nexus with crime arose only later, after [the officer] learned that the car's registered owner had an outstanding arrest warrant, defendant gave the officer a false name, one of the occupants apparently dropped a bindle of drugs on the ground, and a police dog alerted to the presence of drugs in the car. The search was not lawful under the automobile exception."

*Groom*, 249 Or App at 120 (footnote omitted; emphasis added). Thus, *Groom* turned on the distinction between merely "encountering" a vehicle and "encounter[ing] it in connection with a crime." *See Kurokawa-Lasciak*, 351 Or at 192.

That distinction, essential to *Kurokawa-Lasciak*'s formulation, is absolute and unambiguous. Its application in this case is patent. Labrousse testified that, by the time he became aware that the pickup might have some connection to the possible offenses that the officers were investigating, because it might contain defendant's handgun, the pickup had already been moved from 151 Norman to 121 Norman and was parked at the latter address. *See* 255 Or App at 197 n 2. With respect to Myers, the record simply does not disclose when, relative to his observation of the pickup in motion, he first understood that it could be connected to the criminal investigation.[4] Myers did not testify regarding that timing; nor is the balance of the record susceptible to reasonable, nonspeculative inferences as to that matter. *See id*. Accordingly, the state did not meet its burden as to the temporal requirement of the automobile exception, and the trial court erred in concluding that the warrantless search of the pickup was lawful under that exception.[5]

---

[4] Here, as in *Groom*, we are not required to address the requisite nature or strength of the prescribed "connection with [a] crime." *See Groom*, 249 Or App at 120 n 1. That is so because, in this case, the record does not disclose that the officers perceived *any* relationship between the pickup and the crimes that they were investigating until after the pickup had come to its final resting place.

[5] The state's brief as respondent includes some unamplified references to "exigency," and, at oral argument on appeal, the state suggested, in cursory fashion, that the warrantless search of the pickup might have been justified under generic notions of "exigency," distinct from the automobile exception *qua* automobile exception. That alternative contention, which was not raised—at least

Finally, as noted, the state urges that the warrantless search was, alternatively, lawful as pursuant to the consent of the pickup's owner, Pirtle. However, the evidence is uncontroverted that Pirtle withdrew her consent before the handgun was discovered. Accordingly, as of the time the handgun was discovered, the search was nonconsensual and, hence, unlawful. The trial court erred in denying the motion to suppress.

Reversed and remanded.

---

not discretely so—in the state's brief on appeal, was not cogently developed for our consideration. Given that circumstance, and the very substantial "systemically significant" implications of that contention, we decline to address it. *See State v. Kolb*, 251 Or App 303, 311-12, 283 P3d 423 (2012); *see also Groom*, 249 Or App at 121-22 (declining to address proffered "exigent circumstances" alternative basis for affirmance where, *inter alia*, "had the state made an 'exigent circumstances' argument, the facts would likely have developed differently") (citing *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001)).