Argued and submitted August 29, 2012, reversed and remanded July 17, petition for review denied November 7, 2013 (354 Or 389)

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

JERRY EDWARD FINLAY,
*Defendant-Respondent.*

Marion County Circuit Court
11C43608; A149582

307 P3d 518

Michael A. Casper, Deputy Solicitor General, argued the cause for appellant. On the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Laura A. Frikert, Deputy Public Defender, argued the cause for respondent. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Before Ortega, Presiding Judge, and Haselton, Chief Judge, and Sercombe, Judge.

SERCOMBE, J.

## SERCOMBE, J.

The state appeals an order suppressing evidence discovered during a warrantless search of a trailer attached to defendant's vehicle. It contends that the search was lawful under the automobile exception to the warrant requirement and, therefore, that the trial court erred in granting defendant's motion to suppress. On review for errors of law, *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993), we conclude that the search fell within the automobile exception. Accordingly, we reverse and remand.

The relevant facts are undisputed. Operating on a tip from an informant, Silverton Detective Aljets arranged two controlled buys in which defendant agreed—through monitored telephone calls and text messages—to sell methamphetamine to the informant. Before the first controlled buy, police learned that defendant drove a Ford Ranger pickup truck, frequently with a trailer attached, and that he used that truck and trailer to operate a landscaping business.

The first controlled buy occurred on April 13, 2011. Defendant agreed to meet the informant at a grocery store in Silverton. Aljets waited at that location and observed defendant arrive in his truck, which was not pulling the trailer; a passenger then got out of the truck, walked directly toward the informant, and handed the informant methamphetamine. Defendant and the passenger then left. Aljets testified that, although she believed that she had probable cause to arrest defendant that day, she chose not to do so in order to continue her investigation.

The second controlled buy occurred on April 22. Defendant agreed to meet the informant at a restaurant near Silverton. While waiting in the parking lot, Aljets observed defendant's truck enter the parking lot and pull up directly in front of her. That time, defendant's truck was pulling a large, fully enclosed trailer. Defendant got out of his truck, walked inside the restaurant, looked around briefly, and walked back outside, where he was arrested approximately 100 feet from his truck. As defendant walked to the restaurant, two passengers got out of the truck and were arrested.

Defendant was searched, but no methamphetamine was found. Aljets then believed that she had probable cause to search defendant's truck and trailer for methamphetamine. Approximately 30 to 40 minutes after defendant's arrest, officers did so and found methamphetamine in the trailer.

The state charged defendant with one count of delivery of methamphetamine, ORS 475.890. Defendant moved to suppress the methamphetamine, arguing that the warrantless search of the trailer was unlawful under Article I, section 9, of the Oregon Constitution.[1] As relevant here, defendant argued that the search did not fall within the automobile exception for two reasons: First, defendant argued that his truck was not mobile when police "encountered" it in connection with a crime. That was so, he argued, because the relevant "encounter" occurred not when officers observed his truck driving into the parking lot but, rather, when officers arrested him. Second, defendant argued that the automobile exception did not apply to the search of his trailer because a trailer is not a motor vehicle. The state responded that the truck was mobile when police "encountered" it and that the trailer was a part of the truck for purposes of the automobile exception.

The trial court granted defendant's motion to suppress. Specifically, as to defendant's first argument, the court found that Aljets observed defendant drive his truck into the parking lot and park. However, the court agreed with defendant that police did not "encounter" the truck until they had arrested him—that is, when the truck was parked and unoccupied. On that basis, the court concluded that the state was required to prove "that exigent circumstances other than the inherent mobility of the vehicle exist[ed] to justify the warrantless search" and that the state had failed to do so. As to defendant's second argument, the court concluded that, had the truck been mobile when police encountered it, the "quality of mobility [was] as true for the trailer attached to defendant's pickup as for the pickup itself."

---

[1] Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

The state appeals. Relying on *State v. Kurokawa-Lasciak*, 351 Or 179, 263 P3d 336 (2011), it argues that application of the automobile exception requires only (1) that a vehicle is mobile at the time that the police encounter it in connection with a crime and (2) that probable cause supports the search of that vehicle. Further, relying on *State v. Meharry*, 342 Or 173, 149 P3d 1155 (2006), the state maintains that police "encountered" defendant's truck in connection with a crime when Aljets observed defendant drive it into the parking lot and park—not, as the trial court concluded, when police arrested him.

Defendant responds that the trial court correctly concluded that the truck was not mobile when police encountered it. Defendant acknowledges that recent Supreme Court cases, most notably *Kurokawa-Lasciak* and *Meharry*, have required that "the vehicle that the police search * * * be mobile at the time that the police *encounter it in connection with a crime.*" *Kurokawa-Lasciak*, 351 Or at 192 (emphasis added). However, relying on *State v. Brown*, 301 Or 268, 721 P2d 1357 (1986), and later cases citing *Brown*, defendant argues that police "encounter" a vehicle in connection with a crime only when they lawfully stop the vehicle. *See id.* at 274 (requiring "that the automobile [be] mobile at the time it is *stopped by police* or other governmental authority" (emphasis added)). In defendant's view, "subsumed in [the] concept of vehicle mobility is the obvious requirement of a 'stop' of a mobile vehicle." Thus, according to defendant, the fact that "the officers in this case witnessed defendant driving his truck shortly before they arrested him * * * is not itself sufficient to bring this case into the automobile exception—when there [was] no corresponding 'stop' of defendant's truck."

Defendant makes two other arguments; each is presented as an alternative basis for affirming the trial court's ruling. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (explaining circumstances in which we will affirm the trial court on an alternative basis). First, defendant reiterates his argument below that the search of the trailer did not fall within the automobile exception because a trailer is not a motor vehicle. He argues that the Supreme Court in *Brown* established

the exception only for motor vehicles and that later case law establishes that *Brown* "'sets the outer limit for warrantless automobile searches without other exigent circumstances.'" *Kurokawa-Lasciak*, 351 Or at 190 (quoting *State v. Kock*, 302 Or 29, 33, 725 P2d 1285 (1986)). Second, defendant argues that the search of the trailer was not supported by probable cause. Specifically, he argues that police were required to have probable cause to believe that there was contraband in the trailer when they encountered it—that is, before officers arrested defendant and searched him.[2]

As noted, Article I, section 9, guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]" Under that section, a warrantless search is unreasonable unless it "falls within one of the few specifically established and carefully delineated exceptions to the warrant requirement." *Meharry*, 342 Or at 177 (internal quotation marks and brackets omitted). In cases involving a warrantless search, the state bears the burden of proof as to the applicability of an exception to the warrant requirement. *State v. Pirtle*, 255 Or App 195, 199, 296 P3d 625 (2013) (citing ORS 133.693(4)).

The automobile exception was first recognized by the Supreme Court in *Brown*. That case presented the question "whether police officers are required to obtain a warrant before searching the trunk of a lawfully stopped automobile when the officers who arrested the driver have probable cause to believe that the trunk contain[s] relevant evidence of the crime for which the arrest could have been made." 301 Or at 270. The court held that a warrant is not required provided "(1) that the automobile is mobile at the time it is stopped by police or other governmental authority, and (2) that probable cause exists for the search of the vehicle." *Id.* at 274. It reasoned that a vehicle that is mobile at the time

---

[2] Defendant also argues on appeal that the automobile exception is "constitutionally invalid" and that "the appropriate analysis under the state constitution should turn on a case-specific inquiry into the relevant exigent circumstances." As we have previously noted, the automobile exception derives from Supreme Court precedent, which we lack authority to overrule. *See State v. Smalley*, 233 Or App 263, 266 n 1, 225 P3d 844, *rev den*, 348 Or 415 (2010) (explaining that this court has no authority to narrow or overrule precedent establishing the automobile exception). Accordingly, we reject that argument without further discussion.

it is stopped by police presents a *per se* exigency sufficient to overcome the warrant requirement because "'the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.'" *Id.* at 276 (quoting *Carroll v. United States*, 267 US 132, 153, 45 S Ct 280, 69 L Ed 543 (1925)). However, the *Brown* court noted that it was "not confronted * * * with the search of a vehicle that is not mobile and has not just been lawfully stopped by a police officer." *Id.* at 277.

Only months after *Brown*, the Supreme Court decided *Kock*. In that case, the court considered whether the automobile exception applied in the context of a parked, immobile, and unoccupied vehicle. The court held:

> "[W]e emphasized in *State v. Brown* * * * that we were not confronted with the search of a vehicle that was not mobile or that had not just been lawfully stopped by a police officer. We are now confronted with such a case. Although logically it can be argued that the rationale of the seminal case of *Carroll*, [267 US 132], and its progeny, including *United States v. Ross*, 456 US 798, 102 S Ct 2157, 72 L Ed 2d 572 (1982), would justify extending the automobile exception to automobiles that are capable of mobility, we elect to draw the so-called bright line of *Brown* just where we left it in that case: Searches of automobiles that have just been lawfully stopped by police may be searched without a warrant and without a demonstration of exigent circumstances when police have probable cause to believe that the automobile contains contraband or crime evidence. * * * We * * * hold that any search of an automobile that was *parked, immobile and unoccupied at the time the police first encountered it in connection with the investigation of a crime* must be authorized by a warrant issued by a magistrate or, alternatively, the prosecution must demonstrate that exigent circumstances other than the potential mobility of the automobile exist."

*Kock*, 302 Or at 32-33 (emphasis added).

Years later, in *Meharry*, the Supreme Court considered whether the automobile exception applied where an officer observed the defendant driving her vehicle in connection with a reported crime but did not conduct a

roadside stop of the vehicle. In that case, a citizen reported that the defendant was driving erratically with an unrestrained child in her van. An officer responded and, as he was leaving the police station, observed the defendant's van pass in front of him. The officer followed the van and saw the defendant pull it into a convenience store's parking lot and park. He then pulled into the parking lot and parked behind the defendant's van; while doing so, he saw the defendant stagger into the store. 342 Or at 175. The officer confronted the defendant inside the store and observed circumstances that led him to believe that she was under the influence of intoxicants. *Id.* at 175-76. After arresting the defendant, the officer searched her and found a syringe. He then searched the van and found prescription medications, as well as more syringes. The defendant was subsequently charged with multiple crimes.

Before trial, the defendant moved to suppress the evidence found in the van, arguing that the automobile exception did not justify the warrantless search. The trial court granted the motion, and the state appealed. *Id.* at 176. We affirmed, explaining that the relevant "encounter" did not occur until the officer confronted the defendant inside the store and that, at that time, there was no exigency relating to the van's mobility. *Id.* at 179. On review, the Supreme Court reversed, concluding that the van was mobile when police encountered it in connection with a crime. *Id.* at 179-80.

In doing so, the court noted the holding in *Brown*, 301 Or at 277 (warrantless search permitted if there is "probable cause to believe that a lawfully stopped automobile which was mobile at the time of the stop contains contraband or crime evidence"), and observed that, "[o]rdinarily, when the police search a vehicle, they do so after stopping it on the side of the road." *Meharry*, 342 Or at 178. The court went on to reiterate its holding in *Kock* that, in contrast, where a "vehicle had been 'parked, immobile and unoccupied at the time the police first encountered it in connection with the investigation of a crime * * *,' the vehicle was not mobile for the purposes of the automobile exception." *Meharry*, 342 Or at 179 (quoting *Kock*, 302 Or at 33).

Applying those cases, the court in *Meharry* concluded:

> "First, we agree with the state that *[the officer] first encountered defendant's van in connection with a crime when he saw her drive by the police station.* At that point, the van was mobile and [the citizen's] reported observations gave [the officer] reasonable suspicion to believe that defendant was driving under the influence of intoxicants. Second, the Court of Appeals' reasoning fails to give effect to the exigency that ordinarily justifies the warrantless search of a vehicle. As this court explained in *Brown*, the exigency that permits the police to conduct a warrantless search of a mobile vehicle arises from the fact that the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought."

*Id.* at 179-80 (internal quotation marks and citations omitted; emphasis added).

In response to an argument by the defendant that no exigency existed under *Brown* given that the officer had not stopped her vehicle, the court further explained:

> "It is true, as defendant notes, that [the officer] did not effect a stop, as the officer did in *Brown*, by causing defendant to pull her van over to the side of the road and bring it to a stop. [The officer], however, did stop defendant when he followed her into the [convenience store's] parking lot and parked his police car behind her van, preventing her from leaving once she finished her errand. The issue that defendant's argument thus poses is whether stopping an otherwise mobile car from resuming its journey (as [the officer] did here) differs for purposes of the automobile exception from causing a moving car to come to a stop (as the officer did in *Brown*).
>
> "We cannot see a difference, for constitutional purposes, between the two situations. The fact that [the officer] did not have time to effectuate a stop before defendant pulled into the [convenience store's] parking lot but instead effectuated a stop by preventing defendant from continuing her journey does not make her van any less mobile, nor does it make it any less likely that her van—and any evidence inside the van—could have been moved once [the officer] relinquished control over it. Rather, the van remained mobile, and the circumstances in this case were as exigent as they were in *Brown*. Because the same exigency that justified the

warrantless search of the defendant's car in *Brown* justified [the officer's] search of defendant's van in this case, we hold that the rule announced in *Brown* extends to this case."

*Meharry*, 342 Or at 180-81 (citation and footnote omitted).

The Supreme Court most recently applied the automobile exception in 2011 when it decided *Kurokawa-Lasciak*. In that case, the defendant was on foot approximately 30 feet from his van when he was stopped by police. 351 Or at 182. Later, an officer searched the van and discovered evidence related to various drug offenses. The defendant moved to suppress that evidence, arguing that the warrantless search was unlawful. *Id.* at 184. In response, the state argued, among other things, that the automobile exception justified the search. *Id.* at 184-85. The trial court concluded that the van was not mobile and suppressed the evidence. The state appealed, and we reversed, concluding that *Meharry* stood for the principle that a vehicle that is merely operable is mobile for purposes of the automobile exception and that, on that basis, the search was valid. *Kurokawa-Lasciak*, 351 Or at 185.

On review, the Supreme Court reversed, concluding, as the trial court had, that the van was not mobile. After an extensive discussion of *Brown*, *Kock*, and *Meharry*, the court framed the mobility requirement as follows:

"[T]o qualify for the automobile exception, the vehicle that the police search must be *mobile at the time that the police encounter it in connection with a crime.*"

*Kurokawa-Lasciak*, 351 Or at 192 (emphasis added). With that understanding in mind, the court concluded that "there was no evidence from which the trial court could have found that [the] defendant's van was mobile when [the officers] encountered it in connection with a crime." *Id.* at 194.

As noted, in the present case, the state contends that the trial court erred in concluding that defendant's truck was not mobile for purposes of the automobile exception. The state argues that, under *Kurokawa-Lasciak*, to meet the mobility requirement, it must show only that a vehicle is "mobile at the time that police encounter it in connection with a crime." *Id.* at 192. Relying on *Meharry*, the state

further argues that police "encountered" defendant's truck in connection with a crime when, in the course of a criminal investigation of defendant, they observed defendant drive the truck into the parking lot and park. Defendant responds that, under *Brown* and later cases that cite *Brown*, including *Kurokawa-Lasciak* and *Meharry*, police only "encounter" a vehicle in connection with a crime if they lawfully stop that vehicle.

We agree with the state. Put simply, although defendant is correct that the Supreme Court in *Brown* required "that the automobile is mobile at the time it is *stopped by police* or other governmental authority," 301 Or at 274 (emphasis added), the court's most recent decision concerning the application of the automobile exception, *Kurokawa-Lasciak*, states that, "to qualify for the automobile exception, the vehicle that the police search must be *mobile at the time that the police encounter it in connection with a crime*," 351 Or at 192 (emphasis added). Further, in *Meharry*, the court concluded that an officer "encountered" a vehicle in connection with a crime when the officer (who had reasonable suspicion to believe that the defendant was driving under the influence of intoxicants) saw the defendant *driving the vehicle*. 342 Or at 179.

Applying those principles to the facts of this case, here, Aljets encountered defendant's truck when she saw him drive it into the parking lot and park. Further, given the police investigation of the first controlled buy and defendant's recent agreement to participate in the proposed second controlled buy, there is no dispute that that "encounter" occurred "in connection with a crime." Accordingly, defendant's truck was mobile at the time that police encountered it in connection with a crime.

We disagree with defendant's argument that *Meharry* supports his position that the automobile exception requires a roadside stop of a mobile vehicle. In that case, the court noted that, although the officer did not effect a roadside stop of the defendant, he "did stop [the] defendant when he followed her into the [convenience store's] parking lot and parked his police car behind her van[.]" 342 Or at 180. The court considered whether "stopping an otherwise mobile car

from resuming its journey (as [the officer] did [t]here) differs for purposes of the automobile exception from causing a moving car to come to a stop (as the officer did in *Brown*)." *Id*. As noted, it concluded that there was no difference under Article I, section 9:

> "The fact that [the officer] did not have time to effectuate a stop before defendant pulled into the [convenience store's] parking lot but instead effectuated a stop by preventing defendant from continuing her journey does not make her van any less mobile, nor does it make it any less likely that her van—and any evidence inside the van—could have been moved once [the officer] relinquished control over it. Rather, the van remained mobile, and the circumstances in this case were as exigent as they were in *Brown*. Because the same exigency that justified the warrantless search of the defendant's car in *Brown* justified [the officer's] search of defendant's van in this case, we hold that the rule announced in *Brown* extends to this case."

*Id*. at 180-81 (footnote omitted).

Similarly, here, the fact that officers did not effectuate a roadside stop of defendant's truck is immaterial. Officers prevented defendant's truck "from resuming its journey" by seizing defendant and his two passengers. More importantly, as the court in *Meharry* explained, the lack of a roadside stop does not negate the exigency presented by the fact that the truck was mobile when police first encountered it in connection with a crime.

We now turn to defendant's first proffered alternative basis for affirming the trial court's ruling. As noted, defendant argues that the automobile exception did not justify the warrantless search of his trailer because a trailer is not a motor vehicle. Defendant cites no case law directly on point, and we have found none. Rather, defendant argues that *Brown* established an exception only for *motor vehicles* and that, under *Kurokawa-Lasciak*, *Brown* "'sets the outer limit for warrantless automobile searches without other exigent circumstances.'" *Kurokawa-Lasciak*, 351 Or at 190 (quoting *Kock*, 302 Or at 33). In defendant's view, permitting a warrantless search of a trailer that is attached to a mobile vehicle "is a broad expansion of the current automobile exception." We disagree.

"As [the] court explained in *Brown*, the exigency that permits the police to conduct a warrantless search of a mobile vehicle arises from the fact that the 'vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.'" *Meharry*, 342 Or at 180 (quoting *Brown*, 301 Or at 275). That justification applies equally in the case of a trailer, or any container, that is *attached* to a vehicle. That is so because, if the vehicle "quickly move[s] out of the locality or jurisdiction," so too will the container attached to it. *See United States v. Carroll*, 537 F Supp 2d 1290, 1297 (ND Ga 2008) (warrantless search of a trailer attached to a vehicle was proper under the automobile exception to the warrant requirement of the Fourth Amendment to the United States Constitution). Moreover, we fail to see a significant distinction between searching containers *inside* a vehicle, which is permitted under the automobile exception, *Brown*, 301 Or 268 (automobile exception permits the search of a container in a vehicle), and searching containers attached to the *outside* of a vehicle. Here, it is undisputed that the trailer containing methamphetamine was attached to defendant's truck. Accordingly, we agree with the trial court that the "quality of mobility is as true for the trailer attached to defendant's pickup as for the pickup itself."

Defendant next argues that we should affirm the trial court's ruling on the ground that the search of the trailer was not supported by probable cause. Specifically, defendant argues that police were required to have probable cause to believe that there was contraband in the trailer when police encountered the truck—that is, before officers arrested defendant and searched him. We again disagree.

As noted, the automobile exception permits a warrantless search of a vehicle when (1) it is mobile at the time that police encounter it in connection with a crime and (2) police have probable cause to believe that the automobile contains contraband or evidence of a crime. *Kurokawa-Lasciak*, 351 Or at 188, 192. If that rule required police to have probable cause at the time that they encounter a mobile vehicle, there would be no need for the requirement that police encounter the vehicle "in connection with a

crime."[3] Moreover, defendant's argument is at odds with controlling case law. In *Meharry*, the Supreme Court concluded that an officer developed probable cause to search the defendant's van *after* the officer interacted with the defendant and searched her, and that that warrantless search was justified by the automobile exception. 342 Or at 178 n 2. Accordingly, we reject defendant's argument.

In sum, defendant's truck (including the trailer) was mobile at the time that police encountered it in connection with a crime, and probable cause supported the search. Accordingly, the automobile exception justified the search, and the trial court erred in concluding otherwise.

Reversed and remanded.

---

[3] Case law is clear that the phrase "in connection with a crime" does not mean "probable cause." For example, in *Meharry*, the Supreme Court concluded that an officer encountered the defendant's vehicle "in connection with a crime" when the officer saw the defendant driving after receiving reports that gave him "reasonable suspicion" that the defendant was driving under the influence of intoxicants. 342 Or at 179; *see also Pirtle*, 255 Or App at 201 n 4 (declining to "address the requisite nature or strength of the prescribed 'connection with [a] crime'" requirement (brackets in *Pirtle*)); *State v. Groom*, 249 Or App 118, 120 n 1, 274 P3d 876, *rev den*, 352 Or 665 (2012) (same).