Argued and submitted June 21, 2016, affirmed August 23, 2017

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

LEWIS SPENCER GEORGE,
*Defendant-Appellant.*

Wasco County Circuit Court
1200327CR; A158110

401 P3d 1249

Anna Melichar, Deputy Public Defender, argued the cause for appellant. With her on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Jamie K. Contreras, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Paul L. Smith, Deputy Solicitor General, and Susan G. Howe, Assistant Attorney General.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

## ORTEGA, P. J.

Defendant appeals a judgment of conviction for one count of delivery of marijuana for no consideration, ORS 475.860(2)(b). In his sole assignment of error, defendant challenges the trial court's denial of his motion to suppress, which was based upon its determination that the search of the car in which defendant was a passenger was justified under the automobile exception to the warrant requirement, *see State v. Brown*, 301 Or 268, 274, 721 P2d 1357 (1986) (announcing exception), and therefore did not violate Article I, section 9, of the Oregon Constitution. Defendant challenges whether a warrantless search of an automobile is permitted under the automobile exception when the suspected criminal activity that formed the basis of an officer's stop no longer exists at the time of the automobile search, which is based on probable cause for a different offense. We conclude that the search in this case comports with Oregon law regarding the automobile exception, and therefore affirm.

We review defendant's motion to suppress for legal error and state the facts consistently with the trial court's factual findings and its decision denying defendant's motion to suppress. *See State v. Bliss*, 283 Or App 833, 837, *rev allowed*, 361 Or 543 (2017); *State v. Juarez-Godinez*, 326 Or 1, 3, 942 P2d 772 (1997).

Trooper Jubitz was dispatched to Celilo Village, a community of 12 to 15 residences, to provide backup to officers investigating a reported assault, and was told to look for a woman wearing a purple jacket. Jubitz arrived at the village and shortly thereafter saw a tan station wagon pass by him that was driven by a woman fitting the description he had been given. Defendant, whom Jubitz recognized, was sitting in the passenger seat. Believing that the driver was the suspect he was looking for, Jubitz ran across the street and up a driveway to where the car had pulled into a carport. He saw defendant get out and distance himself from the car. Jubitz approached the driver's side, quickly recognized the driver, Frank, and determined that she was not the suspect he was looking for. However, while he was speaking to her, he noticed an open beer can lying on the passenger seat, which is a traffic violation under ORS 811.170. Jubitz did not

detect an odor of alcohol on Frank; however, when he spoke with defendant, he did detect the smell of alcohol. Jubitz informed defendant that he intended to remove the open beer can and, when Jubitz opened the passenger-side door, he was "hit with an overwhelming odor of green marijuana." Jubitz noticed a small blue duffel bag on the floorboard and picked it up. The bag smelled of marijuana, and he opened it enough to see that it contained more than an ounce of marijuana. Defendant asserted that Jubitz needed a search warrant and that his search was illegal. Jubitz arrested defendant.

Defendant filed a written motion to suppress any statements that he had made and all evidence seized from him and the car on the grounds that the warrantless search of the car violated his state and federal constitutional rights. The bulk of defendant's written motion concerned arguments that he was unlawfully stopped and had not consented to the search. However, anticipating that the state would argue that the automobile exception applied to the warrantless search of the car, defendant cited *Brown,* the Supreme Court case recognizing the exception, and argued that the exception did not apply because the car was parked when Jubitz first encountered it and that, "[m]ore importantly, the trooper immediately knew that the driver was not the suspect of the crime he was investigating, and [therefore] *** had no valid basis to arrest [d]efendant." At the suppression hearing, the state asserted that the automobile exception applied because the car was mobile when Jubitz contacted it and that the trooper then had probable cause to investigate an open container violation.

Defendant replied by reiterating that he never consented to the search and that he had demanded that Jubitz obtain a warrant. Defendant also argued:

> "At that point, when [Jubitz is] having contact with the vehicle, the automobile exception does not apply. They are coming into contact with that vehicle, suspecting that vehicle of having—containing an individual in it who was involved in an assault. The automobile exception would likely not apply, under those circumstances *** because what evidence is there going to be inside the vehicle of the assault?

"But, ultimately, \* \* \* as soon as [Jubitz] has contact with [the driver], he realizes that she is not a suspect in anything."

In response, the state reasserted its position that Jubitz had probable cause to search the car based on the open container violation and that the car was mobile because it had been operating just moments before Jubitz approached it.

The trial court denied defendant's motion, ruling that Jubitz had probable cause to investigate the open container violation and that, when he reached in and noticed the overwhelming smell of marijuana, the trooper had probable cause to search the car and the duffel bag. The court ruled that, because the car was initially stopped in connection with a crime and was mobile at the time of the stop, the warrantless car search was permissible under the automobile exception. Defendant ultimately agreed to plead guilty on the delivery charge, but reserved his right to appeal the denial of his motion to suppress under ORS 135.335(3).

We begin by addressing the contours of the automobile exception. Article I, section 9, of the Oregon Constitution establishes "the right of the people to be secure in their persons, houses, and effects, against unreasonable search, or seizure \* \* \*."[1] A warrantless search or seizure is unreasonable and therefore violates the right provided by Article I, section 9, unless the search or seizure comes "within one of the few specifically established and carefully delineated exceptions to the warrant requirement." *State v. Bridewell*, 306 Or 231, 235, 759 P2d 1054 (1988). As relevant here, one of those is the automobile exception. In *Brown*, the court explained that an exigency that justifies a warrantless search arises where "'it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.'" 301 Or at 275 (quoting *Carroll v. United States*, 267 US 132, 153, 45 S Ct 280, 69 L Ed 543 (1925)). The court explained that police officers "need

---

[1] Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

clear guidelines by which they can gauge and regulate their conduct rather than trying to follow a complex set of rules dependent upon particular facts regarding the time, location and manner of highway stops." *Id.* at 277. Accordingly, the court established a *per se* exigency rule for the exception based on its conclusion that the existence of "probable cause to believe that a lawfully stopped automobile which was mobile at the time of the stop contains contraband or crime evidence justifies an immediate warrantless search of the entire automobile for the object of the search, despite the absence of any additional exigent circumstances." *Id.* As announced in *Brown,* the exception applies if (1) "the automobile is mobile at the time it is stopped by police or other governmental authority" and (2) "probable cause exists for the search of the vehicle." *Id.* at 274.

The Supreme Court's later cases addressing the automobile exception have further refined when the exception applies. In *State v. Kock,* 302 Or 29, 33, 725 P2d 1285 (1986), the court held that the exception does not apply to "any search of an automobile that was parked, immobile and unoccupied at the time the police first encountered it in connection with the investigation of a crime." Recently, in *State v. Andersen,* 361 Or 187, 197, 390 P3d 992 (2017), the court reaffirmed the automobile exception that it recognized in *Brown* 30 years earlier and the requirement that it articulated in *State v. Kurokawa-Lasciak,* 351 Or 179, 192, 263 P3d 336 (2011), that "the vehicle that police search must be mobile at the time that the police encounter it in connection with a crime."

On appeal, defendant argues that the automobile exception requires an *ongoing* exigency and that, in his case, the exigency expired when Jubitz realized that Frank was not the assault suspect. Moreover, in defendant's view, a new exigency had not arisen when Jubitz reached in the car to secure the open beer can. That is so, according to defendant, for two reasons. First, the car was parked and, thus, according to defendant, it was not mobile. *See Kock,* 302 Or at 33. Second, the open beer can was not evidence of a crime but of a traffic violation. Fundamental to defendant's argument is his view that, under the automobile exception, there must be a nexus between a vehicle's mobility and connection

to the crime; if either ceases to exist, the exception no longer applies. Put differently, if the suspected criminal activity that existed when the vehicle was first encountered by the officer while it was mobile is extinguished, the *per se* exigency created under the automobile exception is extinguished as well. Defendant justifies his view of the automobile exception because, according to him, "Oregon appellate courts have limited the automobile exception to narrow circumstances as a matter of law and public policy." He points to *Kurokawa-Lasciak*, in which the Supreme Court characterized the rule announced in *Brown* as a "limited exception to the constitutional requirement that a neutral magistrate, and not officers in the field, determine the existence of probable cause to search." 351 Or at 193. Moreover, defendant also points to our decision in *State v. Andersen*, 269 Or App 705, 346 P3d 1224 (2015), *rev'd*, 361 Or 187, 390 P3d 992 (2017), in which, in an *en banc* opinion, we took a narrow view of the automobile exception.

The state responds by arguing that defendant failed to preserve his appellate arguments. On the merits, the state asserts that, contrary to defendant's position, there is no required nexus between a car's mobility and probable cause for a search. That is, the automobile exception to the warrant requirement is comprised of two distinct components—(1) the vehicle is mobile at the time it is stopped by police and (2) probable cause exists for the search of the vehicle—that operate independently of each other. In the state's view, although "*Brown* requires an officer also to have probable cause to believe that the vehicle contained contraband or evidence of a crime for the automobile exception to apply, it did not make the existence of probable cause dependent on the vehicle's mobility, or *vice versa*." Furthermore, the state stresses that the exigency arises from a vehicle's capacity for immediate flight and not from the existence of probable cause. Accordingly, under the state's bright-line view of the automobile exception, the car in this case was capable of immediate flight—the driver could have driven the vehicle away at any time—and thus remained mobile during Jubitz's investigation: That Jubitz's initial reason for approaching the car—he believed the driver might be the assault suspect—may have been extinguished is of no

moment when applying the automobile exception to the investigation here.

We pause to address whether defendant preserved his appellate arguments. Central to the state's challenge to preservation is its characterization of defendant's argument on appeal as an assertion that the car's *mobility* expired when Jubitz realized that the driver was not the assault suspect. In the state's view, at trial defendant focused on the probable cause requirement and not the car's mobility, which the state describes as the requirement that supplies the exigency necessary to support a warrantless search. As we explain, we do not view defendant's argument on appeal in the same way that the state does and conclude that he sufficiently preserved his argument.

Generally, a party's contention must be asserted to the trial court in order for us to consider whether the trial court erred for the reason claimed on appeal. The reason for that is to give "a trial court the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made, which in turn may obviate the need for an appeal." *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008). "The rule also ensures fairness to opposing parties, by requiring that 'the positions of the parties are presented clearly to the initial tribunal' so that 'parties are not taken by surprise, misled, or denied opportunities to meet an argument.'" *State v. Walker*, 350 Or 540, 548, 258 P3d 1228 (2011) (quoting *Davis v. O'Brien*, 320 Or 729, 737, 891 P2d 1307 (1995)). Procedural fairness is the touchstone of the preservation requirement. *Peeples*, 345 Or at 220.

"Precisely what suffices to 'present[ ] clearly' a particular position, for preservation purposes, is not something that can be explained by a neat verbal formula. And, in fact, this court has cautioned that 'problems * * * may arise if the preservation onion is sliced too thinly.'" *Walker*, 350 Or at 548 (quoting *State v. Amaya*, 336 Or 616, 629, 89 P3d 1163 (2004)). "Ultimately, the preservation rule is a practical one, and close calls * * * inevitably will turn on whether, given the particular record of a case, the court concludes that the policies underlying the rule have been sufficiently served." *State*

*v. Parkins*, 346 Or 333, 341, 211 P3d 262 (2009). Moreover, the Supreme Court has indicated that for criminal cases in particular, "in which there is a premium on considerations of cost and speed, the realities of trial practice may be such that fairly abbreviated short-hand references suffice to put all on notice about the nature of a party's arguments." *Walker*, 350 Or at 550.

We conclude that defendant sufficiently preserved his argument. To begin with, the state's preservation argument depends on characterizing defendant's argument on appeal as solely attacking the mobility requirement of the automobile exception set out in *Brown*. Defendant, however, argues on appeal that the two prongs are interrelated—that, if an officer loses his reason for the vehicle stop, the *per se* exigency, which defendant posits is created by both a vehicle's mobility *and* an officer's initial probable cause to stop the vehicle, is lost as well. Defendant's argument below that the exigency created did not allow a warrantless search of the car when Jubitz no longer believed that the driver was the assault suspect, although not as developed as the one he raises on appeal, was sufficient to preserve his appellate argument. To conclude otherwise would be to slice the "preservation onion * * * too thinly." *See Amaya*, 336 Or at 629. Nor do we see how defendant's failure to develop his argument below as fully as he presents it on appeal procedurally disadvantaged the state. The argument that the state advances on appeal is essentially the one that it advanced below, and the trial court made the necessary factual findings and legal determinations to conclude that the search was lawful under the automobile exception. The state does not put forth an explanation of how it would have sought to develop the record differently or that it would have made additional arguments to the trial court had defendant made the precise argument he makes now.

Although defendant sufficiently preserved his argument, the Supreme Court's case law does not support defendant's contention that the *per se* exigency recognized under the automobile exception no longer applies if an officer's initial reason to believe that a crime has been committed dissipates, while at the same time the officer develops probable

cause to believe that another offense has been committed. To begin with, we emphasize two salient points regarding the automobile exception. First, because the automobile exception is derived from Oregon Supreme Court precedent, we have no authority to narrow the exception. *State v. Smalley,* 233 Or App 263, 266 n 1, 225 P3d 844, *rev den,* 348 Or 415 (2010). Second, the automobile exception is a bright-line rule formulated by the *Brown* court to "provide the clearest guidelines for police in conducting automobile searches." 301 Or at 277. That is, instead of determining exigent circumstances on a "case-by-case basis," police can employ the bright-line rule to avoid "trying to follow a complex set of rules dependent upon particular facts regarding the time, location and manner of highway stops." *Id.*

With that in mind, we again state the rule announced by the court in *Brown*: The exception applies if (1) "the automobile is mobile at the time it is stopped by police or other governmental authority" and (2) "probable cause exists for the search of the vehicle." *Id.* at 274. Defendant's argument—that mobility is tied to the officer's initial investigation of an offense and, thus, if that reason for investigation ceases to exist, the exigency is extinguished—reads into the *per se* exigency rule a limitation that is not there. For the rule to apply, a vehicle must be mobile and an officer must have probable cause to search the vehicle. We see nothing in the court's broad articulation of the rule, or any other Supreme Court case subsequent to *Brown,* that adheres an officer's initial suspicion of criminal activity or a traffic violation to the mobility requirement of the exception in the manner posited by defendant, or indicates that an officer's reason for the stop must be ongoing to preserve the *per se* exigency established by the exception.

Further, the court explained in *Brown* (and recently repeated in *Andersen,* 361 Or at 194) that the exigency that constitutionally allows police officers to search a mobile vehicle without a warrant arises because "'the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.'" 301 Or at 275 (quoting *Carroll,* 267 US at 153). Because the vehicle's capacity to immediately leave the scene of a stop or investigation (making it

generally impractical for an officer to obtain a warrant[2]) allows an officer to conduct a warrantless search under the *per se* exigency allowed by the automobile exception,[3] we agree with the state that the mobility status and the probable cause requirements of the automobile exception are not dependent on each other. A search cannot occur without probable cause, but a vehicle's mobility status, which provides the impetus for the *per se* exigency, does not change because an officer's assessment of criminal activity or other offenses has shifted. *See State v. Watson*, 353 Or 768, 770-71, 785 n 19, 305 P3d 94 (2013) (although deciding the case on grounds not raised by defendant here, the court noted that the automobile exception allowed the warrantless search of a vehicle based on probable cause that the vehicle contained marijuana despite the officer having determined not to issue a citation for the traffic violation for which he stopped the vehicle).

To conclude otherwise would require police officers to make case-by-case exigency determinations where an officer has lawfully stopped a vehicle and subsequently loses his reason for that stop but yet develops probable cause to believe that another crime or violation has occurred. Thus, such a conclusion would be contrary to the purpose of the *Brown* court in recognizing a *per se* exigency rule, which is to provide clear search guidelines for police officers when they lawfully stop mobile vehicles. Moreover, that conclusion risks narrowing the rule—something we lack authority to do.

---

[2] In *Andersen*, the Supreme Court did not "foreclose the possibility that *Brown* held out—that changes in technology and communication could result in warrants being drafted, submitted to a magistrate, and reviewed with sufficient speed that the automobile exception may no longer be justified in all cases." 361 Or at 200-01. Nor did the court "foreclose a showing in an individual case that a warrant could have been drafted and obtained with sufficient speed to obviate the exigency that underlies the automobile exception." *Id.* at 201.

[3] Although it is true that the Oregon automobile exception's requirement that an officer must first encounter a vehicle while it is moving does not exactly track the reason for the *per se* exigency, the Supreme Court continues to adhere to the bright-line announced in *Brown*. *See Kurokawa-Lasciak*, 351 Or at 193 (noting that it is "it is just as likely that a person in control of an operable car will drive off with evidence or contraband as will a person in control of a car that was mobile at the time of the initial encounter and that remains mobile thereafter," but nevertheless adhering to its bright-line rule).

We also reject defendant's argument that the probable cause prong of the automobile exception does not apply to traffic violations and, therefore, Jubitz was not allowed under the exception to search the car to obtain evidence of an open container violation. For that argument, defendant relies on wording in *Kurokawa-Lasciak* in which the court stated that, "to qualify for the automobile exception, the vehicle that the police search must be mobile at the time that police encounter it in connection *with a suspected crime.*" 351 Or at 192 (emphasis added). We recently addressed that same language for a related issue in *Bliss*, in which we considered whether the exception authorized a warrantless search of a vehicle where "an officer lawfully conducts a roadside traffic stop for a traffic violation and, during the course of the stop, develops probable cause to believe that the vehicle contains contraband or evidence of a crime." 283 Or App at 837. We concluded that it did. *Id.* We reasoned that the wording in *Kurokawa-Lasciak* that the defendant pointed to must be viewed in the context of that case, in which the court was required "to assess the extent to which the automobile exception would apply outside the context of the standard roadside stop, in which police themselves have lawfully stopped a moving vehicle." *Bliss*, 283 Or App at 841. We also reasoned that the court would have narrowed the exception explicitly in cases it decided after *Brown* had it intended to exclude stops for traffic violations. *Id.* at 842.

Accordingly, we conclude that, under the pertinent case law, the automobile exception continues to supply the *per se* exigency necessary to conduct a warrantless search of the vehicle that was mobile when stopped so long as the officer has probable cause to believe that the vehicle contains evidence of a crime or contraband, even where that probable cause is unrelated to the reason for initially stopping the vehicle. We therefore affirm the trial court's denial of defendant's motion to suppress evidence.

Affirmed.