HADLOCK, C. J.
*1042 *444 Defendant appeals a judgment convicting him of unlawful delivery of heroin, ORS 475.850 ; unlawful possession of heroin, ORS 475.854 ; and unlawful possession of methamphetamine, ORS 475.894 ; as well as ordering the forfeiture of the proceeds of those crimes under ORS 131.582. He assigns error to the trial court's denial of his motion to suppress evidence that a police officer found while searching the trunk of his car. Defendant does not dispute that the officer had probable cause to believe that evidence of criminal activity could be found in the trunk. Nevertheless, he contends that the officer violated Article I, section 9, of the Oregon Constitution by searching the trunk without a warrant because his car was not mobile when police encountered it in connection with a crime, making the automobile exception to the warrant requirement inapplicable. We disagree and, accordingly, affirm.[1]
We review the denial of a suppression motion for legal error and are bound by the trial court's findings of historical facts, both implicit and explicit, if the record includes constitutionally sufficient evidence to support those findings. State v. Walker , 277 Or.App. 397, 398, 372 P.3d 540, rev. den. , 360 Or. 423, 383 P.3d 865 (2016). We state the facts below according to that standard.
At a time when defendant was the subject of a felony arrest warrant, police received an informant's tip that defendant was driving in a specific area of Hillsboro, Oregon. Sergeant White observed the vehicle matching the description given by the informant and confirmed that defendant was the driver. Two other people also were in the car. White followed the car and was joined in the pursuit by Officer Slade. White told Slade that they had probable cause to stop defendant's car because it was being driven by a person with a felony warrant. Slade then pulled behind defendant and turned on his overhead lights. Defendant did not immediately pull over, continuing to drive for about a quarter of a *445 mile before he stopped. Although defendant refused to comply with commands to get out of his car, the officers eventually extricated defendant from the vehicle, handcuffed him, advised him of his Miranda rights, and placed him in the back of a patrol car. The officers then told the passengers, a man and woman, they could leave, although the man stayed in the area and was later arrested.
At some point, the officers became aware that defendant was driving with a suspended license, and White decided to impound the car. Department policy required officers to inventory the vehicle before impounding it, and White conducted that inventory, which revealed a cigarette case containing drug paraphernalia and heroin, electronic scales, and air fresheners and dryer sheets stuffed behind the car's air vents. Based on the items he found in the car, White believed that he probably would find additional evidence of drug crimes elsewhere in the vehicle. Accordingly, White then searched the car's trunk, where he discovered two backpacks and a duffle bag. He opened one of the backpacks and found defendant's wallet and a box with defendant's name on it that contained methamphetamine, heroin, unidentified pills, and over $2,000 in cash. Defendant eventually admitted that the drugs were his and White's subsequent search of the remaining bags revealed an additional electronic *1043 scale along with a glass pipe with drug residue.
Defendant was charged with unlawful possession and delivery of heroin, unlawful possession of methamphetamine, and a count of criminal forfeiture. He filed a motion to suppress, raising multiple challenges to the legality of the search. After a hearing, the court denied that motion and ruled, among other things, that the warrantless search of defendant's car was lawful under the automobile exception. Defendant waived his right to a jury trial and was convicted after a stipulated facts trial.
On appeal, defendant contends that the trial court erred when it denied his motion to suppress. At the outset, it is important to note what defendant does not argue on appeal. Defendant does not challenge the lawfulness of the traffic stop. Nor does he challenge the inventory of the passenger compartment of the car that followed White's *446 decision to impound it. Finally, defendant does not dispute that during the inventory-which revealed evidence of drug crimes-White developed probable cause to believe that additional evidence of drug crimes would be found in the trunk of the car. Rather, defendant argues only that the subsequent search of the car's trunk violated Article I, section 9, of the Oregon Constitution because it was conducted without a warrant.
In challenging the trial court's ruling that the search was proper under the automobile exception to the warrant requirement, defendant argues that the exception does not apply in this case because his car was not mobile when police encountered it in connection with a crime. Specifically, defendant points out that officers stopped the car he was driving "solely due to an arrest warrant" and developed probable cause to believe that evidence would be found in the trunk only later , after the car was already stopped, when White conducted the pre-impoundment inventory. Accordingly, defendant argues, the car cannot be said to have been "mobile at the time that the police encountered it in connection with a suspected crime." State v. Kurokawa-Lasciak , 351 Or. 179, 192, 263 P.3d 336 (2011).
We begin our analysis with a brief overview of the pertinent legal principles. Under Article I, section 9, of the Oregon Constitution, "a warrantless search is unlawful unless an exception to the warrant requirement applies." State v. Rowell , 251 Or.App. 463, 469, 283 P.3d 454, rev. den. , 353 Or. 127, 295 P.3d 640 (2012). Exceptions to the warrant requirement are "specifically established and carefully delineated." State v. Bridewell , 306 Or. 231, 235, 759 P.2d 1054 (1988). The Supreme Court recognized one such exception, the automobile exception, in State v. Brown , 301 Or. 268, 273-79, 721 P.2d 1357 (1986). That automobile exception allows officers to search a car if "they have probable cause to believe that the car contains evidence of a crime and the car is mobile at the time they stop it." State v. Andersen , 361 Or. 187, 189, 390 P.3d 992 (2017).[2] "The exception does not apply, however, if the car is 'parked, immobile and unoccupied at the time *447 the police first encounter it in connection with the investigation of a crime.' " Id. (quoting State v. Kock , 302 Or. 29, 33, 725 P.2d 1285 (1986) ). The court emphasized in Brown that it was providing a bright line formulation of the automobile exception to give clear guidelines for police conducting automobile searches. 301 Or. at 277, 721 P.2d 1357. "Because the automobile exception derives from Supreme Court precedent," determining whether it applies in a specific case "requires us to determine whether the Supreme Court, in adopting the exception, intended it to apply under the circumstances" that the case presents. State v. Bliss , 283 Or.App. 833, 837, 390 P.3d 1099, rev. allowed , 361 Or. 543, 397 P.3d 30 (2017).
As noted, defendant's argument on appeal is narrow. He contends that the automobile exception does not apply because officers stopped his car because they knew he had an arrest warrant-which he asserts was not a stop made "in connection with the investigation of a crime," Andersen , 361 Or. at 189, 390 P.3d 992 -and his stopped car was no longer mobile by the time officers developed *1044 probable cause to believe that the car contained evidence of criminal activity.
The difficulty with that argument is three-fold. First, to the extent that defendant's argument could be understood to suggest that a stop based on an arrest warrant is not a stop to investigate a crime, defendant puts too much emphasis on the courts' use of the word "investigation" in some descriptions of when the automobile exception does and does not apply. No case actually holds that the stop must be for investigative purposes for the exception to apply. To the contrary, courts have tended to use the phrases "in connection with a crime" and "in connection with the investigation of a crime" interchangeably. See, e.g. , Andersen , 361 Or. at 189, 194-97, 390 P.3d 992 (quoting with approval cases using both formulations of the test); Kurokawa-Lasciak , 351 Or. at 181, 186, 190-92, 194, 263 P.3d 336 (quoting earlier cases that used the "investigation of a crime" formulation, but describing the test as concerning whether the vehicle is mobile when "the police encounter it in connection with a crime").
Second, defendant has not explained why stopping a person because that person is the subject of a felony arrest warrant is not a stop made in connection with a crime, for *448 investigatory purposes or otherwise. Under ORS 133.110, a magistrate issues a warrant for arrest when "the magistrate is satisfied that there is probable cause to believe that the person has committed the crime specified in the information or complaint." White first encountered the vehicle as defendant was driving it with a warrant for his arrest, and Slade stopped defendant to execute that arrest warrant, which necessarily involves an underlying suspected crime. We conclude that the arrest of a person for whom an arrest warrant has issued is activity undertaken "in connection with a crime." Cf. Bliss , 283 Or.App. at 839, 842, 390 P.3d 1099 (holding that the automobile exception applies when "police lawfully stop a moving car for a traffic violation and develop probable cause to search the car"; observing that, in developing the exception, the Supreme Court appears to have "contemplated that the automobile exception would apply in the con-text of all roadside stops, not just some of them").
Third, as we have recently explained, as long as a car was mobile when an officer first encountered it in connection with a crime, the automobile exception applies when the officer has probable cause to search the vehicle "even where that probable cause is unrelated to the reason for initially stopping the vehicle." State v. George , 287 Or.App. 312, 322, 401 P.3d 1249 (2017). In George , we considered the Supreme Court's expressed reasons for adopting the exception formulation and determined that "nothing in the court's broad articulation of the rule, or any other Supreme Court case subsequent to Brown * * * indicates that an officer's reason for the stop must be ongoing to preserve the per se exigency established by the exception." Id. at 320, 401 P.3d 1249. That is, there is no required nexus between a vehicle's mobility and probable cause for a search. Thus, it does not matter in this case that the officers developed probable cause for the search of the trunk only during their inventory of the passenger compartment, after the car was already stopped.[3]
*449 In sum, the automobile exception applies in this case because defendant's car was mobile when officers encountered it in connection with defendant's felony arrest warrant and, during the lawful stop for execution of that warrant, officers developed probable cause to search the trunk of the car.
Affirmed.

Because we conclude that the trial court ruled correctly that the search was lawful under the automobile exception, we do not address additional arguments that defendant makes in support of his position that the evidence should have been suppressed.

This case was briefed and argued before the Supreme Court's Andersen decision.

Given our conclusion that officers first encountered defendant's car in connection with a crime when it was actually moving, before they conducted the traffic stop, we need not address defendant's argument that the car was no longer "mobile" for purposes of the automobile exception by the time that officers later developed probable cause to search the trunk of the then-parked car. Cf. State v. Groom , 249 Or.App. 118, 119, 274 P.3d 876, rev. den. , 352 Or. 665, 293 P.3d 226 (2012) (automobile exception did not apply when an officer ran the license plate of a car he was following, lost sight of the car before he learned that its registered owner had an arrest warrant, then later found the car-which by that time was parked-and interacted with the registered owner, who was standing beside it).