No. 534          July 31, 2024          167

*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

GREGORY THOMAS WHITEHORN,
aka Gregory Thomas Whitethorn,
*Defendant-Appellant.*

Marion County Circuit Court
21CR55287; A179935

Audrey J. Broyles, Judge.

Argued and submitted June 17, 2024.

Emma McDermott, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services/Oregon Public Defense Commission.

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General, and Joanna L. Jenkins, Assistant Attorney General.

Before Aoyagi, Presiding Judge, Joyce, Judge, and Jacquot, Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

Defendant appeals from a judgment of conviction for driving under the influence of intoxicants (DUII). He raises two assignments of error. We affirm.

*Motion to suppress:* In defendant's first assignment of error, he challenges the denial of his motion to suppress. He argues that one of the two officers involved in his arrest, Sergeant Meeks, lacked reasonable suspicion to expand the traffic stop into an investigation for DUII. In response, the state argues that while defendant moved to suppress on the basis that the second officer, Officer Reynolds, lacked reasonable suspicion to expand the stop, defendant never argued that Meeks lacked reasonable suspicion, and thus his argument on appeal is unpreserved. We agree that defendant's argument regarding Meeks is not preserved. As to the preserved part of defendant's argument on appeal, we review for evidence sufficient to support the trial court's implicit and explicit findings of fact and for legal error. *State v. Campbell*, 289 Or App 442, 444, 410 P3d 1041 (2017).

Two days before trial, defendant filed a motion to suppress. That motion did not specify any particular theory of suppression; rather, the motion broadly asserted that defendant had been "unlawfully stopped, seized, detained, and searched without a warrant." The trial court denied the motion as untimely (a ruling that defendant does not challenge on appeal). The trial began and Reynolds and Meeks both testified. Reynolds stopped defendant because he was driving erratically. He believed that defendant's passenger was intoxicated but did not initially believe that defendant was. As he was processing a citation for defendant, Meeks arrived at the scene. As Reynolds was working on the citation, Meeks went to speak with the passenger, who was holding his hands out the window in an exaggerated fashion. Meeks told the passenger that he did not have to keep holding his hands out the window. He asked the passenger how his night was going, at which point defendant interjected and said that they were going to Taco Bell. Meeks then went around the car and talked to defendant. He noticed that defendant had glassy eyes and a "thick tongue" (both signs of impairment) and he could smell alcohol, although he could

not tell whether the smell was coming from defendant or the passenger.

Meeks then went back to Reynolds and shared his observations. According to Reynolds, when there are multiple officers at a scene, it is "very common" for them to speak to one another to "further the investigation." Reynolds then spoke with defendant and noticed several signs of impairment. At that point, he believed that he had reasonable suspicion that defendant was driving while impaired and had defendant perform field sobriety tests. He subsequently arrested defendant for DUII.

After Meeks and Reynolds testified, defendant renewed his motion to suppress. He explained that "at this point," his motion would rely on *State v. Arreola-Botello*, 365 Or 695, 451 P3d 939 (2019), which he described as standing for the proposition that there are "temporal and subject matter limitations on an officer when they've stopped somebody." In light of that case, defendant argued that he was "unlawfully seized at the point when the DUI investigation began. *** Officer Reynolds did not have reasonable suspicion to continue with that DUI investigation." Defendant elaborated that "the officer did not have a subjective belief at the time he began the DUI investigation in order to extend the stop. So our contention is that it's an unlawful extension."

In response, the state argued that Reynolds, after learning from Meeks that he had observed defendant's glassy eyes, went and observed defendant again and "at that point, he ha[d] subjective belief." Reynolds then started the investigation and, in the state's view, "he ha[d] reasonable suspicion to start that investigation."

The trial court denied the motion to suppress. It concluded:

> "This was reasonably related. He went back, he talked to the officer. That's common, he said, in investigations. He can go back. He didn't keep him there for any extended, protracted period of time, but it was still in the course of *** the investigation. I don't find that that was unreasonable delay."

As noted, defendant on appeal contends that Meeks unlawfully expanded the scope of the traffic stop by contacting defendant after talking with Reynolds. *See Arreola-Botello*, 365 Or at 712 (officers investigating a traffic violation cannot engage in "investigative activities, including investigative inquiries" that are unrelated to that infraction, unless those activities have an "independent constitutional justification," such as reasonable suspicion of another crime). That argument is unpreserved. Below, defendant framed his argument in terms of whether *Reynolds* had reasonable suspicion to investigate DUII, not whether Meeks had reasonable suspicion to do so. Accordingly, that is the argument that the state responded to and that the court ruled on. Defendant points to his argument at trial that "the officer did not have a subjective belief at the time he began" the investigation, and in his view "the officer" refers to Meeks. He also argues that the court understood as much because its ruling speaks in terms of "he" and that "he" references Meeks. Defendant highlights the court's remark, "He went back, he talked to the officer. That's common, he said, in investigations."

We appreciate that the repeated references by both defendant and the court to "he" and "him," without specifying which officer was the subject, complicates the question whether defendant preserved his claim of error. But in looking at the context in which those arguments and rulings were made, it is apparent that defendant and the court were referring to Reynolds, not Meeks. Reynolds is the officer who testified that it is common for one officer to talk to another during the course of the investigation; thus, the court's reference to that testimony and that officer is necessarily a reference to Reynolds. As to defendant's first point—that in referring to the officer "beginning" the investigation, he was referring to Meeks and not Reynolds—Reynolds testified to his initiation of a DUII investigation and, in light of defendant's argument that "Officer Reynolds" lacked reasonable suspicion, we do not believe that defendant's argument apprised the state or the court of the argument that he now makes on appeal. *See State v. Parkins*, 346 Or 333, 341, 211 P3d 262 (2009) ("Ultimately, the preservation rule is a practical one, and close calls * * * inevitably will turn

on whether, given the particular record of a case, the court concludes that the policies underlying the rule have been sufficiently served.").

Alternatively, defendant maintains that Reynolds did not have reasonable suspicion of DUII. That argument was preserved below. We conclude that the evidence that Reynolds relied on—erratic driving, physical symptoms consistent with impairment, and an odor of alcohol—made his subjective belief that defendant was driving while intoxicated objectively reasonable. The trial court did not err in denying the motion to suppress.

*Challenge to testimony about field sobriety tests:* In his second assignment of error, defendant argues that the trial court plainly erred by not excluding Reynolds's testimony about field sobriety tests. In particular, he challenges Reynolds's testimony that based on his training and experience, (1) a particular result on the horizontal gaze nystagmus (HGN) test indicates that "an alcoholic substance is psychoactive in the person's mind"; (2) that three of the field sobriety tests that he administered are "generally accepted method[s] nationwide" for determining whether a person is impaired; (3) a particular number of clues on the walk-and-turn test indicates impairment; and (4) the tests stand independently of one another and an officer only needs clues on one test to arrest a person for DUII.

In so arguing, defendant relies on cases in which we have concluded that it was plain error for the trial court to admit "scientific" testimony that the field sobriety tests are pass/fail, absent a proper foundation, because the jury would perceive that testimony as suggesting that the tests are able to measure impairment objectively, and that a specific numerical score can prove that the subject is impaired. *See State v. Beltran-Chavez*, 286 Or App 590, 614, 400 P3d 927 (2017) (testimony that the defendant passed or failed the walk-and-turn and one-leg stand tests, when viewed in the context of testimony about standardized tests, would have led jury to believe that the tests had been scientifically calibrated to detect impairment); *see also State v. Ortiz*, 325 Or App 134, 138-39, 528 P3d 795, *rev allowed*, 371 Or 308 (2023) (testimony that field sobriety tests are "designed to

determine impairment," nationally "standardized," and supported by studies that "prov[e] their validity" was scientific evidence whose admission, absent a proper foundation, constituted plain error). The state, in contrast, argues that we should not review his claim because defendant may have had a tactical reason for not objecting.

Even assuming that allowing Reynolds's testimony was a plain error, we decline to exercise our discretion to correct it. On this record, it is plausible that defendant chose not to object because he intended to use the National Highway Traffic Safety Administration manuals to try to establish that Reynolds improperly administered the field sobriety tests, a line of questioning that presupposed the existence of a nationwide standard practice that officers are to follow. *State v. Mello*, 332 Or App 215, 223, 549 P3d 42 (2024) (declining to exercise discretion to review similar claim of error where it was "reasonable to infer that defendant had a strategic reason for not objecting during the officer's testimony describing how he administered the FSTs and instead allowing the scientific testimony but then arguing that the tests were not administered in accordance with strict requirements"). Defendant also used in closing argument Reynolds's testimony that he had initially erred in instructing defendant on how to perform the walk-and-turn test and the fact that Reynolds only observed one clue on another test. Because the evidence was arguably helpful to defendant, counsel may have decided not to object to its admission so that he could rely on it, and, consequently, we decline to correct any error in admitting it.

Affirmed.